No. 75,014

AMANDA KAY BONIN, *Appellant*, v. DONALD D. VANNAMAN, M.D.; MARCILE BONIN; and ARTHUR T. BONIN, JR., *Appellees*.

929 P.2d 754

200

Opinion filed December 20, 1996.

*Bryson R. Cloon*, of Cloon, Bennett & Ronan, of Overland Park, argued the cause, and was on the brief for appellant.

*Roger W. Warren*, of Blackwell Sanders Matheny Weary & Lombardi, L.C., of Overland Park, argued the cause, and *Todd A. Scharnhorst*, of the same firm, was with him on the brief for appellee Donald D. Vannaman, M.D.

*Theodore A. Corless*, of Armstrong, Teasdale, Schlafly & Davis, of Kansas City, Missouri, argued the cause, and *Lynn W. Hursh* and *Thomas H. Mills*, of the same firm, were on the brief for appellees Marcile Bonin and Arthur R. Bonin, Jr.

*Wayne T. Stratton* and *Jeffrey A. Houston*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, were on the brief for *amicus curiae* Kansas Medical Society.

The opinion of the court was delivered by

ABBOTT, J.: The plaintiff, Amanda Kay Bonin, brought this action against her medical doctor for malpractice and fraud and against her parents for negligence in not bringing an action against her doctor before her cause of action became barred by the ap-

plicable statute of repose. The trial court held against her on all issues. This appeal involves the constitutionality of K.S.A. 60-515(a) (statute of repose); a claim of fraud for failure of plaintiff's doctor to disclose her condition; a claim that the doctrine of continuous treatment is an exception to the statute of repose; and a claim that the doctrine of parental immunity does not shield plaintiff's parents from liability.

Amanda Kay Bonin was born on February 22, 1976. Defendant Dr. Donald D. Vannaman became her pediatrician shortly after birth. In January 1980, when Amanda was 3 years old, Dr. Vannaman evaluated her for possible chest pneumonia. As a part of this evaluation, Dr. Vannaman referred Amanda to a radiologist who performed a chest x-ray. In summarizing Amanda's chest x-ray, the radiology report stated in part: "There is mild scoliosis of the thoraco-lumbar spine but this could be positional." Dr. Vannaman made handwritten notes on the radiology report concerning Amanda's pneumonia. Thus, it appears that Dr. Vannaman reviewed the radiology report. Dr. Vannaman never communicated to Amanda or her parents any concern raised by the radiology report that Amanda might have scoliosis. While Dr. Vannaman provided all of Amanda's care, including her physical exams, he took no steps to further evaluate her possible scoliosis condition. Dr. Vannaman did not diagnose Amanda with scoliosis at this time. According to Amanda, scoliosis in the "mild" stage is correctable with proper treatment. Prompt and proper treatment of scoliosis at an early stage prevents progression into the "moderate" stage, which may require invasive surgery and cause lifelong problems.

In May 1987, when Amanda was 11 years old, she participated in a routine scoliosis exam performed by the school nurse at her elementary school. From this exam, Amanda received a report of spine deformity. The report recommended that Amanda see a physician for a scoliosis evaluation. Amanda underwent a series of x-rays and was diagnosed with moderately severe scoliosis. As a result, Amanda underwent several spinal surgeries. The surgeries were minimally successful, and Amanda presently suffers severe disability, preventing her from participating in many activities. Amanda may require future invasive surgery throughout her life.

Defendants Marcile and Arthur T. Bonin, Jr., are Amanda's parents. When Amanda was diagnosed with moderately severe scoliosis, her parents did not investigate to determine if Dr. Vannaman had failed to promptly diagnose Amanda's scoliosis, nor did they bring a timely malpractice action against Dr. Vannaman.

In the fall of 1994, when Amanda was 18 years old, Amanda and her mother began to gather Amanda's medical records, including those from Dr. Vannaman, in order to assist Amanda in formulating a lifetime spine management plan. In reviewing these records, Amanda discovered the 1980 x-ray report possibly identifying her mild scoliosis at age 3. On February 21, 1995, Amanda brought this action against Dr. Vannaman for fraud by silence and for malpractice in failing to promptly diagnose her scoliosis at age 3.

Dr. Vannaman filed a motion to dismiss the action. Dr. Vannaman claimed that both the malpractice and fraud claims were barred by K.S.A. 60-515(a). K.S.A. 60-515(a) is both a statute of limitations and a statute of repose. If a tortious act occurs while a person is a minor, then the minor is entitled to bring the action 1 year after reaching the age of majority (18), but "no such action shall be commenced by or on behalf of any [minor] more than eight years after the time of the act giving rise to the cause of action." K.S.A. 60-515(a). Dr. Vannaman contended that more than 8 years from his alleged failure to diagnose Amanda's scoliosis in 1980 had passed before Amanda filed the suit. Thus, the action was barred by the statute of repose under 60-515(a). Further, Dr. Vannaman argued that the separate fraud claim could not apply to him because it was, in actuality, identical to the malpractice action. In response, Amanda argued that 60-515(a) was unconstitutional and should not bar her claims, that the continuous treatment doctrine created an exception to the statute of repose, and that Dr. Vannaman was liable for a separate fraud cause of action.

On July 5, 1995, the Johnson County District Court granted Dr. Vannaman's motion and dismissed the claims against him. The court ruled that 60-515(a) was constitutional and barred the malpractice claim. The court also found that the plaintiff's fraud claim could not be brought as a separate claim against Dr. Vannaman because it was actually a malpractice action grounded in negli-

gence. Further, the court held that even if the fraud action was proper, it was barred by 60-515(b). Finally, the court refused to recognize the doctrine of continuous treatment as an exception to the statute of limitations or repose.

In this same action, Amanda also sued her parents for failing to bring a timely malpractice action against Dr. Vannaman before the 8-year statute of repose under 60-515(a) had expired. Amanda's parents filed a motion to dismiss. They alleged that Amanda's claim against them was barred by the statute of repose and by the doctrine of parental immunity. The court granted the Bonins' motion and filed an order dismissing the action against them, with prejudice.

Amanda filed an appeal, and the case was transferred to this court for review and determination pursuant to K.S.A. 20-3018(c).

## FRAUD CAUSE OF ACTION

The trial court held that Amanda's fraud claim against Dr. Vannaman was actually a medical malpractice claim, grounded in negligence, and could not be filed as a separate claim against Dr. Vannaman. As such, the trial court dismissed the claim, and Amanda appeals.

In considering a motion to dismiss for failure of the petition to state a claim, the court must view the facts in the light most favorable to plaintiff, and with all doubt resolved in the plaintiff's favor, determine if the petition states any valid claim for relief. " ' "Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." ' " *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381, 834 P.2d 1344 (1992) (quoting *Bruggeman v. Schimke*, 239 Kan. 245, 247, 718 P.2d 635 [1986]). However, this court is not required to accept conclusory allegations argued by the plaintiff regarding the legal effect of the presumed facts if the allegations do not reasonably follow from the facts. *Blevins*, 251 Kan. at 381. See *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 481, 620 P.2d 837 (1980).

K.S.A. 60-515(a) governs the time in which Amanda must file her action. See *Ripley v. Tolbert*, 260 Kan. 491, 497, 921 P.2d 1210 (1996) ("[T]he 8-year statute of repose under 60-515(a) applies to

all tortious acts committed while the plaintiff is a minor, regardless of how old the plaintiff is (a minor or an adult) when the action actually accrues.").

K.S.A. 60-515(a) includes both a statute of limitations and a statute of repose.

"A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued. It is substantive." *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992).

Acting as a statute of limitations, K.S.A. 60-515(a) allows a plaintiff to bring a cause of action, based on a tortious act which occurred during minority, within 1 year after reaching the age of ·majority. Amanda turned 18 on February 22, 1994. She filed this action on February 21, 1995, which was within 1 year of her 18th birthday. Thus, Amanda filed this action within the statute of limitations found in 60-515(a). However, acting as a statute of repose, 60-515(a) does not allow an action to be commenced more than 8 years after the time of the act giving rise to the cause of action. Both parties agree that the act giving rise to the cause of action occurred in January 1980, when Dr. Vannaman allegedly failed to diagnose Amanda's scoliosis at the early stage. Thus, the 8-year statute of repose under 60-515(a) would have expired in 1988, 7 years prior to Amanda's filing this action.

Amanda tried to avoid this 8-year statute of repose in 60-515(a) by alleging two separate causes of action against Dr. Vannaman, one in fraud and one in medical negligence/malpractice. Amanda contends that her fraud action is timely under K.S.A. 60-513. K.S.A. 60-513 provides in pertinent part:

"(a) The following actions shall be brought within two years:

. . . .

"(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is *discovered*.

. . . .

"(b) Except as provided in subsection (c); the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause

of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitations shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, *but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.*" (Emphasis added.)

Amanda alleges that Dr. Vannaman's fraud was not "discovered" until 1994 when she requested her medical records from him. At this time, Amanda discovered that Dr. Vannaman had failed to inform her of her scoliosis in 1980 and continued not to inform her of her scoliosis until 1987 when she was finally diagnosed with it. At the time of this discovery, Amanda was 18 years old. As such, she contends that 60-515(a) does not apply to this claim. Instead, Amanda contends that 60-513 governs her fraud claim. Thus, according to Amanda, her fraud claim against Dr. Vannaman accrued in 1994 when the fraud was discovered. Amanda asserts that she had 2 years from 1994 to timely file her fraud claim under 60-513(a)(3). Amanda filed her fraud claim against Dr. Vannaman on February 21, 1995. Thus, Amanda argues that her fraud claim was timely filed within the 2-year statute of limitations period from the discovery of the fraud in 1994. See K.S.A. 60-513(a)(3).

However, Dr. Vannaman points out that 60-513(b) contains a statute of repose which does not allow any action to be commenced more than 10 years beyond the time of the act giving rise to the cause of action. Both parties agree that the act giving rise to the alleged fraud occurred in January 1980, when Dr. Vannaman allegedly failed to diagnose Amanda's scoliosis in its mild stage. Ten years from this date would be January 30, 1990. Amanda did not file her claim for fraud until February 21, 1995. Thus, her fraud claim, if it is valid, is barred by the 10-year statute of repose under 60-513(b).

In order to bring her fraud claim, Amanda asks this court to expand the expired 10-year statute of repose in 60-513(b), based on the doctrine of fraudulent concealment. Under the doctrine of fraudulent concealment, the statute of limitations for a fraud cause of action does not start to run until the plaintiff discovers the fraud or until the plaintiff learns such facts as would lead a reasonable

person to investigate. See *Dalton v. Lawrence National Bank*, 169 Kan. 401, Syl. ¶ 6, 219 P.2d 719 (1950). There are two problems with this argument. One, it is not clear that the fraudulent concealment doctrine applies to a statute of repose in the same manner that it applies to a statute of limitations. See *Harding*, 250 Kan. at 668. We need not decide this question because even if the fraudulent concealment doctrine does apply to statutes of repose, the doctrine only tolls the time in which a fraud action may be filed if the plaintiff's claim for relief is validly grounded in fraud on its face. *McCoy v. Wesley Hospital & Nurse Training School*, 188 Kan. 325, 331, 362 P.2d 841 (1961) ("The [fraudulent concealment] rule applies only when the party against whom the bar of the statute is interposed is required to allege fraud in pleading his cause of action, or to prove fraud to entitle him to relief."). Addressing this second concern, Dr. Vannaman contends that Amanda has not pled a valid claim for fraud.

In support of her fraud claim, Amanda points to PIK Civ. 2d 14.42. This instruction outlines the elements of "fraud by silence." Amanda claims that these elements of "fraud by silence" are satisfied by Dr. Vannaman's conduct. She argues that Dr. Vannaman had knowledge of material facts—that Amanda's chest x-ray indicated possible mild scoliosis at age 3—which Amanda or her parents did not have. She further argues that her parents were justified in relying on Dr. Vannaman's evaluation of the x-ray without investigation because they had no reason to know of facts which would make their reliance unreasonable. According to Amanda, Dr. Vannaman, as her primary physician, was under an obligation to communicate to Amanda or her parents all material facts concerning her chest x-ray and her back condition. Amanda contends that, looking at the facts in the light most favorable to her as the plaintiff, Dr. Vannaman intentionally failed to communicate to her or her parents the material fact that Amanda's chest x-ray indicated she might have scoliosis. Amanda argues that she and her parents justifiably relied upon Dr. Vannaman to communicate the material fact about Amanda's scoliosis to them. Finally, Amanda points out that she sustained damages as a result of Dr. Vannaman's failure to communicate information about Amanda's chest x-ray to

Amanda or her parents. Based on this analysis, Amanda contends that the elements of fraud by silence are met, as defined by PIK Civ. 2d 14.42, and that she validly pleads a claim of fraud against Dr. Vannaman.

Dr. Vannaman alleges that his conduct did not constitute fraud. According to Dr. Vannaman, this claim is simply Amanda's attempt to circumvent the statute of repose in 60-515(a) by creatively classifying a malpractice action as fraud. In support of this position, the defendant cites to *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976), and *Travis v. Bishoff*, 143 Kan. 283, 54 P.2d 955 (1936).

In *Malone*, one of the plaintiffs, Rose Malone, visited the K.U. Medical Center (Med Center) for treatment. A physician diagnosed an infection, gave her a prescription, and ordered her home. The next day Rose's uterus ruptured, killing the fetus she was carrying. She returned to the Med Center by ambulance and a total hysterectomy was performed without her consent.

Rose and her husband filed an action against the Med Center, alleging that the Med Center breached two express contracts. According to Rose, when she originally visited the hospital for treatment, she entered into an express contract with the Med Center in which the Med Center agreed to provide complete, competent, and necessary medical treatment for her. Rose alleged that the Med Center breached this contract by sending her home with an improper diagnosis. Rose and her husband also alleged that when Rose returned to the hospital the next day, they entered into an express agreement in which the Med Center agreed to provide "only necessary, competent, and authorized medical treatment." 220 Kan. at 372. Rose and her husband contend that the Med Center breached this contract by failing to provide competent doctors and by performing a hysterectomy on Rose without her informed consent.

The Med Center filed a motion to dismiss, alleging that this was not a contract action but was a tort action, from which it was immune as a governmental entity. The trial court granted the motion, and the plaintiffs appealed. The pertinent issue in the case was

whether the plaintiffs' petition validly stated a contract claim or only alleged a tort action. 220 Kan. at 373.

In answering the question, this court stated:

"The nature of a claim—whether it sounds in tort or contract—is determined from the pleadings [citations omitted] and from the real nature and substance of the facts therein alleged. 1 C.J.S. Actions, § 35, p. 1076. . . .

. . . .

"Certain duties and obligations are imposed upon physicians and hospitals by law. Breach of such duty by a physician is malpractice, and an action for damages for malpractice is one in tort, even though there was a contract, express or implied, for employment. [Citation omitted.] Similarly an action for damages against a hospital for negligence, *i.e.*, for breach of duties imposed by law, sounds in tort. This is true though there may be a contract between the parties.

. . . .

"In *Tefft v. Wilcox*, 6 Kan. 46, 61 [1870], this court held that a physician is obligated to his patient under the law to use reasonable and ordinary care and diligence in the treatment of cases he undertakes, to use his best judgment, and to exercise that reasonable degree of learning, skill, and experience which is ordinarily possessed by other physicians in the same or similar locations. We have continued to impose those duties upon physicians. See PIK Civil 15.01 and cases there cited. A physician also has the duty to make a reasonable disclosure to the patient of pertinent facts within his knowledge relating to proposed treatment, in order that the patient may intelligently consent or refuse the treatment. [Citation omitted.]

. . . .

" . . . What plaintiffs are complaining about is that the treatment provided was negligent—all of the needed treatment was not furnished, and that which was furnished was incomplete, incompetent, and unauthorized. In other words, the hospital and the physicians failed to exercise that reasonable care, skill, and diligence which the law requires of hospitals and physicians—regardless of any express contract therefor between the parties.

"Clearly the action sounds in tort, and under that theory the defendants are immune from liability. The general rule is that a plaintiff will not be permitted to characterize a tort action as one in contract in order to avoid the bar of the statute of limitations or governmental immunity. *Travis v. Bishoff*, 143 Kan. 283, 54 P.2d 955 [1936]; *Talbot v. Waterbury Hospital Corp.*, 20 Conn. Sup. 149, 164 A.2d 162 (1960); *Billings v. Sisters of Mercy of Idaho*, 86 Idaho 485, 389 P.2d 224 [1964]; *Mamunes v. Williamsburgh Gen. Hosp.*, 28 App. Div. 2d 998, 283 N.Y.S.2d 457[, *aff'd* 23 N.Y.2d 757, 296 N.Y.S.2d 954, 244 N.E.2d 468 (1968)]; and, see, *Yeager v. [Dunnavan]*, [26 Wash. 2d 559, 174 P.2d 755 (1946)]." 220 Kan. at 374-76.

Thus, this court affirmed the district court's dismissal of the action.

In *Travis*, 143 Kan. at 285, this court said: "The law of this state is realistic. Substance prevails over form. It is perfectly manifest that, notwithstanding the form given to the petition, the gravamen of the action was malpractice, which is a tort, and the action was barred by the two-year statute of limitations."

Based on the above cases, Dr. Vannaman alleges that he has a duty, in treating or diagnosing patients, to use ordinary care and diligence and the degree of learning ordinarily possessed by members of his profession in the same community under like circumstances. The failure to uphold such standard is a form of negligent treatment called malpractice. PIK Civ. 2d 15.01 and Comment. According to Dr. Vannaman, Amanda is alleging that he did not use ordinary care and diligence, as other doctors would have used, when he failed to disclose the information on her chest x-ray and when he failed to diagnose her scoliosis in its mild stage. As such, Dr. Vannaman asserts that this is a cause of action for malpractice, not fraud.

We agree. It is true that Dr. Vannaman's alleged conduct fulfills all of the elements of fraud by silence under PIK Civ. 2d 14.42, just as the Med Center's actions in *Malone* fulfilled all of the elements of a breach of contract. However, Dr. Vannaman's alleged conduct was also proscribed by a legal duty which he had an obligation to uphold. When it is alleged that such legal duty is violated, the law has classified the cause of action created by this breach as a form of negligence called malpractice, not as fraud or breach of contract, even if the violation of such duty also technically fulfills the elements of fraud or breach of contract. Amanda does not allege a valid claim of fraud against Dr. Vannaman.

This does not mean that a doctor can never be liable for fraud or breach of contract. Instead, this simply means that a fraud or breach of contract cause of action can only be based upon a physician's misconduct if that misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold. See *Noel v. Proud*, 189 Kan. 6, 8, 11, 367 P.2d 61 (1961) ("As early as 1870 the Kansas court recognized the general rule that a physician may contract specifically for a particular result. . . . It is generally recognized that a physician or a surgeon may bind himself by ex-

press contract to perform a cure or obtain specific results by treatment or an operation.").

As this court stated in *Noel*, 189 Kan. at 10 (quoting *Calebrese v. Bickley*, 208 Misc. 407, 408-09, 143 N.Y.S.2d 846 [1955], *aff'd as modified* 1 App. Div. 2d 874, 150 N.Y.S.2d 542 [1956]):

"'As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of action. But no matter what the approach, it remains an action for malpractice, not one for deceit, contract or anything else. *A well recognized ground for recovery is where a physician represents that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proof that an action in fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice.*'" (Emphasis added.)

Since Amanda's claim for fraud is not valid, the doctrine of fraudulent concealment cannot exist in this case. The doctrine may not be utilized to extend the time for Amanda to file either her malpractice claim or her invalid fraud claim. Thus, the only claim Amanda has against Dr. Vannaman is a malpractice claim grounded in negligence. This action is barred by the 8-year statute of repose under K.S.A. 60-515(a).

## CONSTITUTIONALITY OF K.S.A. 60-515(a)

Amanda contends that the 8-year statute of repose in K.S.A. 60-515(a), which bars her malpractice claim against Dr. Vannaman, is unconstitutional as a violation of equal protection, due process, and the open courts provision. Further, Amanda claims that K.S.A. 60-515(a) is unconstitutional in light of K.S.A. 60-523, which establishes different time limitations for minors who bring sexual abuse causes of actions.

Determining whether a statute violates the constitution is a question of law. When determining a question of law, this court may exercise an unlimited de novo standard of review. *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 844, 863 P.2d 364 (1993); see *State v. Nelson*, 249 Kan. 689, 692, 822 P.2d 53 (1991).

A statute is presumed constitutional, and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A

statute must clearly violate the constitution before it may be struck down. *State v. Scherzer*, 254 Kan. 926, Syl. ¶ 6, 869 P.2d 729 (1994); *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute. *State v. Durrant*, 244 Kan. 522, 534, 769 P.2d 1174, *cert. denied* 492 U.S. 923 (1989).

. K.S.A. 60-515 states as follows:

"(a) *Effect.* Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action.

"Notwithstanding the foregoing provision, if a person imprisoned for any term has access to the court for purposes of bringing an action, such person shall not be deemed to be under legal disability."

In Kansas, a person who is under 18, a minor, may not bring a lawsuit in his or her own name. Instead, if a minor has a cause of action, it must be pursued by a guardian, a conservator, a guardian ad litem, or a "next friend" who is an adult. K.S.A. 60-217. K.S.A. 60-515(a) tolls the statute of limitations for a minor's cause of action until 1 year after the minor turns 18. In this way, the minor can bring the lawsuit once the minor turns 18 (and before the minor turns 19) if the minor's "next friend" has failed to bring the lawsuit during the plaintiff's minority. However, a minor does not always have the opportunity to bring a lawsuit in his or her own name. K.S.A. 60-515(a) also contains an 8-year statute of repose for all claims, not just malpractice claims, which are based upon a tortious act that occurred during the plaintiff's minority. This statute of repose runs from the time of the act giving rise to the cause of action, regardless of when the minor experiences injury or the cause of action becomes reasonably ascertainable and accrues. *Ripley v. Tolbert*, 260 Kan. 491, 497, 921 P.2d 1210 (1996). Thus, a

minor's claim may be barred before the minor or the minor's parents ever discover that the minor is injured or the cause of such injury.

The statute of limitations and repose for an adult's cause of action are different. Most of an adult's causes of action are governed by a 2-year statute of limitations. K.S.A. 60-513(a)(1)-(7). The statutes of repose for adults vary, depending upon the type of action at issue. This is unlike the statute of repose for minors, which is 8 years, regardless of the type of action. K.S.A. 60-515(a). For most causes of action, an adult has a 10-year repose period from the time of the act giving rise to the cause of action in which to file a claim. If the claim is not filed within this 10-year repose period, then the claim is expired, regardless of whether the plaintiff's injury has been discovered. This statute of repose is 2 years longer than the 8-year statute of repose allowed for minors. For a medical malpractice action, an adult has a 4-year statute of repose period from the time of the act giving rise to the cause of action in which to file a claim. If the claim is not filed within this 4-year repose period, then the claim is expired, regardless of whether the plaintiff's injury has been discovered. K.S.A. 60-513(c). The adult statute of repose for medical malpractice actions is 4 years shorter than the 8-year statute of repose allowed for minor actions.

## EQUAL PROTECTION

First, Amanda contends that K.S.A. 60-515(a) is unconstitutional because it violates equal protection. The principle of equal protection relevant to Amanda's claim is embodied in § 1 of the Kansas Constitution Bill of Rights. See *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 127-28, 631 P.2d 222 (1981). This section provides: "All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness."

The equal protection provision of the United States Constitution is found in the 14th Amendment, which provides:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any State deprive any

person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*" (Emphasis added.)

Amanda contends that the statute of repose provision in K.S.A. 60-515(a) classifies minor plaintiffs differently from adult plaintiffs and applies a shorter statute of repose (8 years) to these plaintiffs than the general statute of repose which is applied to adult plaintiffs (10 years). According to Amanda, this distinction in repose periods between minors and adults creates a disparity between two classes of citizens which places minors in a worse position than adults, thereby violating the equal protection rights of minors.

Here, Amanda, the minor plaintiff in a medical malpractice action, is challenging the 8-year statute of repose as a violation of equal protection which is detrimental to her. An adult in a medical malpractice case only has a 4-year statute of repose, which is 4 years shorter than the repose period allowed for a minor to bring a medical malpractice action. Amanda, as a minor plaintiff, is better off in this medical malpractice action than if she were an adult plaintiff because she had a longer statute of repose (8 years) than an adult would have had (4 years). Since Amanda is not actually worse off than an adult plaintiff would be in this case, this equal protection challenge could be found moot. However, the appellees do not raise this argument, so we will consider the equal protection issue.

This court has traditionally treated malpractice legislation as economic regulation in which the rational basis test is applied. *Bair v. Peck*, 248 Kan. 824, 831, 811 P.2d 1176 (1991) (abrogation of vicarious liability between certain health care providers); *Stephens*, 230 Kan. at 130 (shortened statute of limitations in medical malpractice cases). The 8-year statute of repose in K.S.A. 60-515(a) was enacted in 1976 in response to the rapidly rising costs of medical malpractice insurance and the increasing reluctance of underwriters to insure physicians in Kansas. See Report on Kansas Legislative Interim Studies to the 1976 Legislature, Part II, Special Committee on Medical Malpractice, L. 1976, ch. 254. Thus, K.S.A. 60-515(a) qualifies as malpractice legislation, and the rational basis test is the appropriate standard to apply in evaluating the equal protection concerns of the statute.

*Leiker v. Gafford*, 245 Kan. 325, 363-64, 778 P.2d 823 (1989), explains the "rational basis" test, also known as the "reasonable basis" test, as follows:

"The 'reasonable basis' test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power, even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Thus, under the rational basis test, if the defendant can show any facts which indicate that the different treatment between minor plaintiffs and adult plaintiffs is rationally related to a valid legislative objective, then the different statute of repose under K.S.A. 60-515(a) for minors does not violate equal protection. See *Leiker*, 245 Kan. at 364; *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 620, 576 P.2d 221 (1978).

One of the espoused purposes of K.S.A. 60-515(a) is to help health care providers procure available and affordable medical malpractice insurance. Before K.S.A. 60-515(a) included the 8-year statute of repose, a minor had 1 year after reaching the age of majority to file suit. See *Wheeler v. Lenski*, 8 Kan. App. 2d 408, 409, 658 P.2d 1056, *rev. denied* 233 Kan. 1093 (1983). Under this law, physicians could have liability exposure for up to 19 years if a plaintiff was injured at birth. This "longtail" of liability was viewed as "the most serious threat to the availability of care" by physicians practicing in this area. Letter to Kansas Medical Society attached to Senate Committee on Public Health & Welfare, March 2, 1976. The legislature heard testimony that 90% of birth-related problems are discovered within the first 2 years of a child's life, and that over 85% of all claims are filed within the first 6 years of a child's life. Minutes of the House Committee on Insurance, pp. 2-3, January 30, 1976. After review of the facts, the Kansas Legislature adopted an 8-year statute of repose for minors to insure that health care providers in Kansas could obtain affordable malpractice insurance and would continue to practice medicine in Kansas, making health care available to all Kansas citizens. Thus, 60-515(a) is rationally related to the State's valid legislative objective of keeping malprac-

tice rates low so that health care providers will practice medicine in Kansas.

Amanda concedes that low malpractice rates and health care availability were some of the objectives the legislature hoped to gain when it amended 60-515(a) in 1976 to include an 8-year statute of repose. Amanda also seems to accept that the statute was rationally related to these legislative objectives at that time. However, Amanda contends that these are no longer *valid* legislative objectives. As Amanda points out, 20 years have passed since the medical malpractice insurance scare of the 1970s and concerns about the rising costs of malpractice insurance and the availability of health care in Kansas have dissipated. There are now caps on damages and other statutes in place to control malpractice lawsuits and the cost of malpractice insurance. According to Amanda, it is time to review whether malpractice insurance rates and health care availability are still valid state interests which are served by restricting minors' rights to bring an action to court to 8 years from the date of injury.

There is no doubt that reducing medical malpractice insurance rates so as to insure the availability of health care in Kansas has been found to be a legitimate and valid state interest in the past. *Aves v. Shah*, 258 Kan. 506, 526, 906 P.2d 642 (1995); *Farley v. Engelken*, 241 Kan. 663, 684-85, 740 P.2d 1058 (1987); *Liggett*, 223 Kan. at 620; *Stephens*, 230 Kan. at 130. This court has no reason to suspect that the state interests of keeping medical malpractice insurance rates low so that health care will be available in Kansas are not just as valid state interests today as they were in 1976.

Questions about the validity of 60-515(a) have been raised twice before and held constitutional in *Ripley*, 260 Kan. at 500, and *Wheeler*, 8 Kan. App. 2d at 409-11, but the legislature has not chosen to reevaluate the importance of the state interests behind K.S.A. 60-515(a). It is not this court's place to second-guess the legislature. Thus, we hold that the 8-year statute of repose for minors in 60-515(a) is rationally related to state interests which are still valid today as they were in 1976. As such, the 8-year statute of

repose applicable to minors in 60-515(a) in a medical malpractice action does not violate equal protection.

## DUE PROCESS

The principle of due process relevant to this claim is embodied in § 18 of the Kansas Constitution Bill of Rights. It provides: "All persons, for injuries suffered in person, reputation or property, *shall have* remedy by due course of law, and justice administered without delay." (Emphasis added.)

The due process provision of the United States Constitution is found in the 14th Amendment, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

Amanda contends that she suffered an injury due to Dr. Vannaman's failure to diagnose her scoliosis in its early stage. Because Amanda was personally injured, she asserts that she is entitled to a remedy by due course of law—a medical malpractice action against Dr. Vannaman. K.S.A. 60-515(a) prohibits Amanda from utilizing this remedy because she did not become aware of her claim until after the 8-year repose period from the time of the act giving rise to the cause of action had expired. Thus, Amanda argues that 60-515(a) is a violation of due process under § 18 of the Kansas Constitution Bill of Rights and under the 14th Amendment of the United States Constitution.

If a remedy protected by due process is abrogated or restricted by the legislature, "such change is constitutional if 'the change is reasonably necessary in the public interest to promote the general welfare of the people of the state,' *Manzanares v. Bell*, 214 Kan. 589, 599, 522 P.2d 1291 (1974), and the legislature provides an adequate substitute remedy" to replace the remedy which has been restricted. *Aves*, 258 Kan. at 521. The first question in a due process analysis is whether there is a significant public interest to justify an 8-year statute of repose on actions brought by minors and whether this restriction on minors' lawsuits has a real and substantial relation to the objective sought. See *Liggett*, 223 Kan. at 614; *Manzanares*, 214 Kan. at 599.

According to Dr. Vannaman, there is a significant public interest in assuring the availability of reasonably priced malpractice insurance for doctors so that doctors will continue to practice medicine in Kansas. Further, Dr. Vannaman contends that the 8-year statute of repose for minors in 60-515(a) has a real and substantial relation to the state objectives of affordable, available malpractice insurance for doctors and available health care for Kansas citizens. As discussed in the previous equal protection subsection, these are valid state interests and the 8-year statute of repose for minors' claims in 60-515(a) is rationally related to achieving these interests. There is no need to reevaluate this analysis under a due process argument. *Clements v. United States Fidelity & Guaranty Co.*, 243 Kan. 124, 127, 753 P.2d 1274 (1988) ("The test in determining the constitutionality of a statute under due process or equal protection weighs almost identical factors."). Thus, the 8-year statute of repose restriction, in 60-515(a), on Amanda's common-law right to bring suit against Dr. Vannaman is reasonably necessary to promote the general welfare of the people of the state. See *Brubaker v. Cavanaugh*, 741 F.2d 318, 321 (10th Cir. 1984) (finding that the 4-year statute of repose for adult medical malpractice claims under 60-513 is a reasonable length of time and supports a legitimate interest in preventing stale claims; thus, it does not violate due process even though it places a hardship on particular plaintiffs).

However, under Kansas law, "even if the modification of the common-law remedy is consistent with public policy, this does not necessarily satisfy the due process concerns. In order to insure due process, the legislature is required to provide an adequate, substitute remedy when a common-law remedy," such as a minor's cause of action for personal injury, is modified or restricted. *Aves*, 258 Kan. at 522 (citing *Jenkins v. Amchem Products, Inc.*, 256 Kan. 602, 628, 886 P.2d 869 [1994], *cert. denied* 133 L. Ed. 2d 38 [1995]).

"A quick review of a few cases in which this court has discussed whether the legislature provided an adequate quid pro quo for the abrogation of a remedy is helpful. The *Manzanares* court found that the No-Fault Insurance Act's 'prompt, efficient payment of certain economic losses' to accident victims was an adequate substitute remedy for the modification of nonpecuniary remedies. 214 Kan. at

599. Furthermore, the mandatory *availability of no-fault insurance* was found to be an adequate substitute remedy even though the injured party was required to purchase the insurance himself or herself. 214 Kan. at 599.

"In *Rajala v. Doresky*, 233 Kan. 440, 441, 661 P.2d 1251 (1983), the court found that a reduced burden of proof was an adequate substitute remedy for the abrogation of workers' common-law remedy to sue employers for work-related injuries. *Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 (1991), found that the mandatory Fund coverage was an adequate quid pro quo for the modification of the vicarious liability remedy. In *Samsel*, 246 Kan. 336, the right to recover more than $250,000 in noneconomic damages was abolished. The court found the legislature provided a quid pro quo in that a district judge could not remit damages to less than $250,000 when the jury awarded damages in excess of $250,000. 246 Kan. at 362." *Aves*, 258 Kan. at 522-23.

Here, K.S.A. 60-515(a) restricts a minor's common-law right to bring a cause of action for personal injuries to 8 years from the time of the act giving rise to the cause of action. In some instances, as here, 60-515(a) abolishes a minor's right to bring a claim altogether, because the minor may not discover that he or she has a claim until the 8-year statute of repose has already expired. The quid pro quo for the restriction or abrogation a minor's common-law right in 60-515(a) is the continued availability of health care in Kansas. Health care is readily available in Kansas because medical malpractice insurance is available to physicians at a reasonable rate, in part due to the passage of 60-515(a) and its 8-year statute of repose. If the availability of no-fault car insurance is considered an adequate quid pro quo for a restriction on nonpecuniary remedies, then the availability of health care also qualifies as an adequate quid pro quo for an 8-year time restriction on a minor's common-law right to pursue a cause of action. See *Manzanares*, 214 Kan. at 599. An adequate quid pro quo has been provided, and 60-515(a) does not violate the Due Process Clauses of the Kansas Constitution Bill of Rights or the United States Constitution.

## OPEN COURTS

Amanda's open courts argument also is based on § 18 of the Kansas Constitution Bill of Rights.

According to Amanda, this section guarantees that all injured persons, whether they be minors or adults, will have *access* to the courts to receive a remedy. K.S.A. 60-515(a) restricts a minor's

access to the court in that a minor's cause of action must be filed within 8 years of the act giving rise to the cause of action. This often requires that the action be filed before the minor ever reaches the age of majority and is able to file the claim in his or her own name. In fact, if an act giving rise to a cause of action occurs to a minor who is between the ages of 0 to 9, the minor will never be able to bring the cause of action arising out of this act in his or her own name. Further, as in this case, the 8-year statute of repose in 60-515(a) can extinguish a minor's claim before a minor is even aware that he or she is injured or has a claim. Thus, Amanda contends that her right to have access to the court in order to receive a remedy for her injury, under § 18 of the Kansas Constitution Bill of Rights, has been violated by the 8-year statute of repose in K.S.A. 60-515(a). Amanda primarily bases this argument on a Missouri case, *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7 (Mo. 1986).

However, the Missouri constitutional provision at issue in *Strahler* (Art. 1, § 14 of the Missouri Constitution) is distinguishable from the constitutional provision at issue in this case. (§ 18 of the Kansas Constitution Bill of Rights.) The language of the two provisions is similar, but they are interpreted in different ways. Missouri has recognized a distinct open courts provision in its constitution which is separate and independent from a due process provision. Kansas has not done so. Four Kansas cases refer to an open courts provision. *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1027, 686 P.2d 171 (1984); *In re Marriage of Glenn*, 18 Kan. App. 2d 603, 856 P.2d 1348, *rev. denied* 253 Kan. 603 (1993); *In re Marriage of Case,* 18 Kan. App. 2d 457, 856 P.2d 169 (1993); *In re S.M.*, 12 Kan. App. 2d 255, 738 P.2d 883 (1987). Three of these four cases quote the definitive language regarding the open courts provision which is found in *O'Keefe*, 235 Kan. at 1027:

"The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. However, *the guarantee creates no new rights but merely is declaratory of our fundamental principles.* In light of this guarantee, it is the policy and the obligation

of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard. This right extends to everyone who may be materially affected by the action of the court in a legal proceeding. The guarantee secures and places every citizen within the protection of the law of the land. It insures the right of every person protected by it to seek remedy by court action for any injuries done to him or his personal property. The guarantee entitles the citizen to have justice administered according to the law without denial or delay. A litigant is assured the right to prosecute or defend an action, provided he prosecutes or defends the action as contemplated by law." (Emphasis added.) *O'Keefe*, 235 Kan. at 1027.

Kansas does not recognize a separate right to an open court, independent from the recognized right to due process. Section 18 of the Kansas Constitution Bill of Rights only recognizes and guarantees a person's independent right to due process. Amanda's due process challenge has been previously addressed in this opinion and rejected. Since a separate and independent right to an open court does not exist in Kansas, Amanda's open courts challenge to the 8-year statute of repose in K.S.A. 60-515(a) must also fail.

## DIFFERENT CLASS OF MINORS

In 1992, K.S.A. 60-515(a) (Ensley), with its 8-year statute of repose for all minors and its 1-year statute of limitations from a minor plaintiff's 18th birthday, was amended to exempt those causes of actions brought by minors under K.S.A. 60-523. K.S.A. 60-523 was enacted in 1992 and provides in pertinent part:

"(a) No action for recovery of damages suffered as a result of childhood sexual abuse shall be commenced more than three years after the date the person attains 18 years of age or more than three years from the date the person discovers or reasonably should have discovered that the injury or illness was caused by childhood sexual abuse, whichever occurs later."

K.S.A. 60-523 establishes a longer statute of limitations (3 years) for minors who are injured by sexual abuse, and it imposes no statute of repose at all on such actions. According to Amanda, the enactment of 60-523 and its preferential treatment of minors with sexual abuse claims violates due process, open courts, and the equal protection rights of minors who must bring their claims under 60-515(a).

The due process concerns of 60-515(a) have been previously addressed. "[D]ue process emphasizes fairness between the state and the individual dealing with the state, regardless of how other individuals in the same situation are treated." *Clements*, 243 Kan. at 127. We have already concluded that 60-515(a) creates a fair relationship between the State and a minor plaintiff; thus, it does not violate due process. The fact that K.S.A. 60-523 was enacted and treats some minor plaintiffs differently does not affect the prior due process analysis of 60-515(a).

Amanda also contends that 60-523 treats minors differently than they are treated under 60-515(a), which violates the open courts provision. As discussed previously, Kansas does not recognize an independent open courts provision; thus, an analysis of such a provision is not necessary.

Finally, Amanda contends that 60-515(a) violates her equal protection rights in light of the enactment of 60-523. As we have previously discussed, Amanda points out that minors who are victims of sexual abuse are treated more favorably under 60-523 than minors who are victims of other torts are treated under 60-515(a).

The Equal Protection Clause forbids the arbitrary and discriminatory classifications of similarly situated individuals if the classifications are not at least rationally related to a legitimate state interest. See *Farley*, 241 Kan. at 669. K.S.A. 60-515(a) and K.S.A. 60-523 certainly classify minor plaintiffs into two classifications which are treated differently. However, equal protection is only implicated when a statute treats "arguably indistinguishable" or "similarly situated" classes of people differently. *Smith v. Printup*, 254 Kan. 315, 321, 866 P.2d 985 (1993).

These two classes of minor plaintiffs—those who are victims of sexual abuse and those who are victims of other tortious conduct—are not arguably indistinguishable. Minors who are victims of sexual abuse are not just physically damaged, but are often psychologically damaged in such a way that prevents the minor from understanding that he or she has been "injured" by the abuse, even if the minor is currently aware that the abuse occurred. See *Shirley v. Reif*, 260 Kan. 514, 520, 920 P.2d 405 (1996). Many victims of sexual abuse experience problems such as alcoholism, drug abuse, and promis-

cuity, but they are not able to attribute these injuries to the sexual abuse until some time later, although they may have been aware of the abuse all along. See *Shirley*, 260 Kan. at 520. Further, many victims of sexual abuse are abused by their parents or other family members. As such, the minor victim's parents are not in a position to look out for the minor's rights and pursue a claim on the minor's behalf.

On the other hand, minor plaintiffs who are not victims of sexual abuse ordinarily do not experience these problems with bringing their claims. Most minors are able to communicate to their parents before the 8-year statute of repose expires that they have experienced an injury. See *Wheeler*, 8 Kan. App. 2d at 409-11. Further, such injuries are usually attributable to the tortious conduct of a defendant within an 8-year time period of the tortious act. As the legislature heard when contemplating whether 60-515(a) should be enacted, 90% of birth-related medical malpractice claims are discovered within the first 2 years of a child's life and over 85% of all claims are filed within 6 years of occurrence. Minutes of the House Committee on Insurance, pp. 2-3, January 30, 1976. Based on these differences, these two classifications of minor plaintiffs are not similarly situated or arguably indistinguishable so as to implicate equal protection. See *Smith*, 254 Kan. at 321-22 (holding that tort victims seeking punitive damages are not "arguably indistinguishable" from tort victims who are not seeking punitive damages because the law has always "treated the victims of particularly egregious conduct differently from other tort victims"). Since equal protection is not implicated by the minor classifications in 60-515(a) and 60-523, a discussion of whether the classifications are at least rationally related to a legitimate state interest is not necessary.

Further, K.S.A. 60-515(a) cannot be found to violate equal protection in light of K.S.A. 60-523 because of the order in which the statutes were adopted. The 8-year statute of repose provision of K.S.A. 60-515(a) was enacted in 1976 and has not been found to violate equal protection despite several changes since 1976. K.S.A. 60-523, creating the separate classification for minor plaintiffs who are victims of sexual abuse, was not enacted until 1992. Amanda

argues that 60-523, which was enacted 16 years after 60-515(a) was enacted, can somehow cause 60-515(a) to retroactively become unconstitutional. A subsequently enacted statute cannot cause a statute, which has previously been found constitutional, to suddenly become unconstitutional. If there is an equal protection concern regarding these two classifications, this concern must fall on the more recently enacted statute of 60-523. Amanda does not fall into the class of plaintiffs protected by 60-523. Regardless of the classifications created by 60-523 and the constitutionality of these classifications, 60-515(a) was previously found constitutional and cannot become unconstitutional by the enactment of 60-523. K.S.A. 60-515(a) does not violate equal protection, regardless of the status of K.S.A. 60-523.

## CONTINUOUS TREATMENT DOCTRINE

Amanda became Dr. Vannaman's patient in 1976. In 1980, Dr. Vannaman allegedly committed malpractice because he failed to tell Amanda or her parents that Amanda's x-ray indicated she might have mild scoliosis. Under the 8-year statute of repose in 60-515(a), Amanda had to file her malpractice action against Dr. Vannaman by 1988 in order to be timely. In 1988, Amanda was still a patient of Dr. Vannaman, and she continued to be treated by Dr. Vannaman until 1992. Amanda's medical records were under the control of Dr. Vannaman throughout this time period. According to Amanda, she had no reason to suspect any fault on the part of Dr. Vannaman, who had treated her since she was a baby and whom she trusted throughout her childhood. Further, Amanda asserts that she had no reason to look at her medical records until 1992, when she began to evaluate her future medical concerns as an adult. Thus, Amanda's only opportunity to bring a claim against Dr. Vannaman expired in 1988 while she was still a patient of Dr. Vannaman and while he still retained control over her records, even though she had no reason to suspect that he was liable for anything at that time. If the 8-year statute of repose under 60-515(a) did not begin to run until Amanda was no longer a patient of Dr. Vannaman and until she had an opportunity to discover his alleged malpractice, then Amanda's claim would be timely filed.

As such, Amanda asserts that the Kansas courts should recognize the continuous treatment doctrine as a matter of good public policy. According to Amanda, the continuous treatment doctrine would toll the 8-year statute of repose in 60-515(a) while the victim of malpractice continues to be treated by the negligent doctor. Once the victim is no longer a patient of the negligent doctor, then the 8-year time limit under 60-515(a) would begin to run.

The trial court refused to recognize the doctrine of continuous treatment or apply it to the facts of this case. Whether the doctrine of continuous treatment should be recognized in Kansas within the context of a medical malpractice case is a question of law. Thus, this court may exercise an unlimited de novo standard of review. *Dickerson v. Kansas Dept. of Revenue*, 253 Kan. 843, 844, 863 P.2d 364 (1993).

This court has previously addressed whether it should recognize the doctrine of continuous treatment in the context of a medical malpractice action in at least three different cases and has refused to recognize the doctrine in each case. *Becker v. Floersch*, 153 Kan. 374, Syl., 110 P.2d 752 (1941); *Hill v. Hays*, 193 Kan. 453, Syl. ¶ 3, 395 P.2d 298 (1964); *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 93-94, 490 P.2d 649 (1971).

In *Becker*, 153 Kan. 374, this court rejected the plaintiff's continuous treatment tolling theory. The *Becker* court found that it must strictly follow the legislature's intent. Thus, the court found that "[t]he two years allowed by the statute of limitations in which to bring an action for damages for malpractice begins to run from the time such wrongdoing is committed," regardless of the negligent doctor's continued treatment of the patient. 153 Kan. at 377 (case decided before discovery rule for statute of limitations was adopted).

In *Hill*, 193 Kan. at 456-57, the plaintiff's malpractice action was dismissed because it was filed after the statute of limitations had expired. The plaintiff appealed, contending that the time for him to file his action should have been tolled while the relationship between him and the doctor continued to exist. This court again rejected the continuous treatment theory. In so holding, the court made the following analysis:

"Appellant contends that the statute of limitations did not commence to run on his cause of action until the relationship of patient and physician relative to the particular injury and treatment had ceased to exist.

"Appellant cites numerous cases from other jurisdictions in support of his contention. Without analyzing the numerous cases cited, it must be conceded that appellant's contention is supported by considerable authority. However, it does not appear to be the general rule. (41 Am. Jur., Physicians and Surgeons, § 123.) It has never been the law in this state. This court has adhered to the rule that the cause of action accrues and the statute of limitations begins to run on an action for malpractice at the time the tort is committed. The time in which the action must be brought is not tolled by the fact that the relationship of physician and patient continues to exist.

. . . . .

"This court may not approve of the law announced above, however, it does not make the law as to the limitation of time in which an action may be brought. There was no time fixed for the bringing of actions under the common law other than the equity rule of laches. Limitations are created by statute and are legislative, not judicial acts. (53 C.J.S., Limitations of Actions, § 2, p. 905.)

"The legislature has specifically stated that the statute of limitations begins to run on an action such as is now before us when the cause of action accrues."

In *Hecht*, 208 Kan. at 93-94, this court stated:

"Plaintiff strenuously urges that the time when a cause of action in malpractice shall be deemed to have accrued should be extended through the period of time . . . the physician continues to treat the patient for the injury which resulted from the negligent act. [This doctrine is] commonly designated as the . . . 'continuous treatment' [doctrine] . . . which ha[s] considerable support. (See 80 A.L.R. 2d, Anno., p. 368, and cases cited therein, and A.L.R. 2d Later Case Service, 1971 Supplement, 80 A.L.R. 2d, pp. 30-33 incl.; and Cornell Law Quarterly, Vol. 47, No. 3, p. 339.)

. . . .

"An examination of the cases in which [the doctrine] was adopted reveals that generally the treatment was a judicial effort to soften the harshness of the statutory accrual rule existing in the particular jurisdiction at the time. The Kansas legislature preempted policy making on the subject by enacting in 1963 the additional provision of 60-513 [which tolls the running of the statute of limitations until the negligent act accrues, or the injury becomes reasonably ascertainable] and has given the matter further consideration by enacting in 1970 additional provisions relating to injuries resulting from ionizing radiation. (See K.S.A. 1970 Supp. 60-513a, 60-513b and 60-513c.) The legislature did not see fit to mention . . . 'continuous treatment' as an element in measuring the time in which a cause of action accrues. We are not inclined to do so by judicially legislating. This is not to say that evidence stemming from . . . 'continuous treatment,'

when relevant, would not bear upon the issue as to when substantial injury becomes reasonably ascertainable."

However, in support of her argument that Kansas should recognize the doctrine of continuous treatment, Amanda cites to two Missouri cases and a Kansas legal malpractice case.

The Missouri cases, *Thatcher v. De Tar*, 351 Mo. 603, 173 S.W.2d 760 (1943), and *Thompson v. Volini*, 849 S.W.2d 48 (Mo. App. 1993), both recognize the doctrine of continuous treatment, but the doctrine was not controlling in either case. The plaintiffs in both cases were able to pursue their claims without relying on the continuous treatment doctrine. This court has previously acknowledged that significant foreign precedent exists to support the continuous treatment doctrine. Nonetheless, this court has not followed the foreign precedent. Instead, this court has found that statutory limitations on lawsuits are legislative enactments, which should not be modified by the judiciary.

Finally, *Morrison v. Watkins*, 20 Kan. App. 2d 411, 889 P.2d 140, *rev. denied* 257 Kan. 1092 (1995), is the only Kansas case which Amanda cites in support of the continuous treatment doctrine. In *Morrison*, the plaintiff brought a legal malpractice action against, *inter alia*, an attorney who acted as a trustee of a trust for several years. The trial court granted summary judgment to the attorney, finding that the statute of limitations and the statute of repose governing the action had expired. The plaintiff appealed, alleging that the continuous representation doctrine tolled the applicable statute of limitations and statute of repose while she remained in an attorney/client relationship with the attorney and used him as a trustee for her trust. 20 Kan. App. 2d 411, 413, 416-17, 422-23.

The Court of Appeals held, *inter alia*, that the continuous representation rule did in fact toll the statute of limitations until the plaintiff fired her attorney as a trustee of her trust. As such, the plaintiff's claim against her attorney did not accrue and the statute of limitations did not begin to run until she terminated the attorney/client relationship.

However, the Court of Appeals also ruled that the continuous representation doctrine did *not* toll statutes of repose. "Statutes of

repose . . . abolish a cause of action after a specific time period, even if the cause of action may not have accrued yet." 20 Kan. App. 2d at 423 (citing *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 [1992]). Thus, the court held that all of the attorney's alleged negligent acts which occurred 10 years prior to the filing of the action were barred by the 10-year statute of repose under 60-513(b), regardless of the fact that the attorney/client relationship had continued during most of this 10-year time period. The case was remanded so the trial court could determine which of the attorney's alleged negligent acts occurred more than 10 years ago and had expired under the statute of repose, despite any representation which continued after these acts occurred. The plaintiff was entitled to proceed on all of the attorney's alleged negligent acts that had occurred within 10 years of the action and had not been discharged by the statute of repose. 20 Kan. App. 2d at 427.

Since Kansas applies the doctrine of continuous representation to attorneys, the plaintiff contends that the analogous doctrine of continuous treatment should be applied to physicians. Nonetheless, Dr. Vannaman asserts that even if this court should recognize the doctrine of continuous treatment in the context of a medical malpractice action, the doctrine would not apply to him. This is because the doctrine of continuous treatment would not toll a statute of repose in a medical malpractice case, just as the doctrine of continuous representation does not toll a statute of repose in a legal malpractice case. 20 Kan. App. 2d at 423. Dr. Vannaman points out that his alleged failure to diagnose Amanda's scoliosis occurred in 1980. In 1995, a full 15 years later, Amanda brought this malpractice action. Thus, Amanda's action is barred by the 8-year statute of repose in K.S.A. 60-515(a), which began to run in 1980 and expired in 1988.

We agree with Dr. Vannaman. As noted above, this court does not recognize the continuous treatment doctrine in the context of a medical malpractice action. If we were to do so, it would be of no comfort to Amanda because the statute of repose in K.S.A. 60-515(a) would not be tolled by the continuous treatment doctrine and would still bar her claim.

## PARENTAL IMMUNITY

When the statute of repose expired in 1988, Amanda was 11 years old. Under the law, Amanda was not capable of bringing a timely lawsuit against Dr. Vannaman in her own name. In this situation, the law expects a minor's parents or "next friend" to bring a timely lawsuit on behalf of the minor since the minor cannot do so his or herself. Defendants Marcile and Arthur T. Bonin, Jr., are the parents and lawful guardians of Amanda, and they had the authority to act on Amanda's behalf during her minority. However, Amanda's parents failed to bring a timely malpractice action against Dr. Vannaman on Amanda's behalf.

Amanda's scoliosis was diagnosed as moderately severe in the summer of 1987. This was approximately 6 months before the 8-year statute of repose under 60-515(a) expired and quashed any claim Amanda might have had against Dr. Vannaman. Amanda's parents, despite knowledge that Amanda's scoliosis was already in a moderately severe stage when it was discovered by the school nurse, did not take any action to determine if Dr. Vannaman had failed to promptly diagnose Amanda's scoliosis. Amanda's parents did not bring a lawsuit against Dr. Vannaman on Amanda's behalf before the 8-year statute of repose in 60-515(a) expired. Thus, Amanda sued her parents for failing to timely investigate and for failing to bring a timely action against Dr. Vannaman before the 8-year statute of repose under 60-515(a) expired.

Amanda's parents filed a motion to dismiss. They alleged that the claims against them were barred by the doctrine of parental immunity. The trial court granted the parents' motion and dismissed the action against them with prejudice. Amanda appeals the trial court's dismissal of her negligence action against her parents.

"Our scope of review, where the trial court has sustained a motion to dismiss, is concisely defined in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 (1980):

'When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer.' [Citation omitted.]

'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.' [Citation omitted.]

'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.' [Citation omitted.]" *Bruggeman v. Schimke*, 239 Kan. 245, 247, 718 P.2d 635 (1986).

The question of whether Kansas recognizes the doctrine of parental immunity in a suit brought by a child based on the parents' failure to timely file a medical malpractice action on behalf of the child is a question of law. This court may review questions of law with an unlimited de novo standard of review. *Dickerson*, 253 Kan. at 844.

Both parties agree that the only Kansas case concerning the doctrine of parental immunity is *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980). In the *Nocktonick* case, Rosanna Nocktonick, an unemancipated minor child, brought suit through a "next friend" (her maternal grandfather) against her natural mother, Regina Nocktonick, and Regina's insurance company, to recover damages for injuries arising out of a car accident caused by Regina's negligence. Regina moved for summary judgment, alleging that the doctrine of parental immunity barred Rosanna's claim. The trial court granted summary judgment to Regina, and Rosanna appealed.

In analyzing the issue, the *Nocktonick* court first outlined the general history, justifications, and exceptions to the doctrine of parental immunity. Most legal scholars conclude that the doctrine of parental immunity was not based in the English common law, but was founded in the United States. The doctrine of parental immunity originated in a Mississippi state court, *Hewlett v. Ragsdale*, 68 Miss. 703, 9 So. 885 (1891), and spread across the country. The

justifications for the doctrine included the following public policies: the preservation of family harmony; the availability of other means of redress for the child (criminal neglect laws applicable to parents); the court's desire to refrain from interfering with parental care, discipline, and control of a child; the court's desire not to drain a family's assets in favor of an injured minor/plaintiff at the expense of other children in the family; the possibility that the parent/defendant might inherit from the child the damages which the child/plaintiff recovered; and the danger of fraud and collusion between a parent and a child. Many courts point out that the same public policy concerns which support the parental immunity doctrine also support the interspousal immunity doctrine.

Over the years, many criticisms of the parental immunity doctrine began to develop. These criticisms resulted in some well-accepted exceptions to the doctrine of parental immunity, including:

1. Parental immunity does not apply to a property tort brought by a minor child against a parent; the doctrine only applies to personal torts.

2. Parental immunity does not exist if a parent intentionally or recklessly inflicts bodily harm on a child.

3. Parental immunity does not exist if a parent negligently inflicts bodily harm on a child and the harm occurs in the course of a business activity carried on by the parent. 227 Kan. at 762-64.

Finally, the *Nocktonick* court pointed out that several states have abolished parental immunity in negligence cases altogether. Other states only recognize the doctrine of parental immunity when "the alleged negligent act involves an exercise of parental authority over the child; and . . . where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing, medical and dental services, and other care." 227 Kan. at 764 (citing *Goller v. White*, 20 Wis. 2d 402, 413, 122 N.W.2d 193 [1963]).

Before *Nocktonick*, this court had never addressed the doctrine of parental immunity. It had never officially recognized the doc-

trine, nor made exceptions to it, nor abrogated it. The *Nocktonick* court stated: "Here, the court is free to either adopt the doctrine of parental immunity or to reject it, without overruling any prior Kansas case law, rejecting any rule of the common law, or invalidating any Kansas statute. Stated simply, our task is to decide which rule best serves the needs of justice in Kansas in the closing years of the twentieth century." 227 Kan. at 759. This court decided in *Nocktonick* that justice was best served by *not* recognizing the doctrine of parental immunity when an unemancipated minor seeks to recover damages from a parent for injuries caused by the negligence of the parent while operating an automobile. 227 Kan. at 767. The court stated:

"We believe that the authorities which favor abrogation of the parental immunity doctrine state the proper approach in light of modern conditions and conceptions of public policy. We see no good reason why children should not enjoy the same right to protection and to legal redress for wrongs done them as others enjoy." 227 Kan. at 766.

Thus, this court allowed Rosanna to pursue a negligence action against her mother for injuries arising out of a car accident caused by her mother. (It should be noted that while Rosanna was still an unemancipated minor when this suit was brought against her mother, the minor plaintiff's coming of age after injury by a parent but before bringing suit against a parent, as in Amanda's situation, does not affect the parental immunity analysis. Annot., 6 A.L.R.4th 1066, § 5.)

In so holding, the *Nocktonick* court cited several reasons for not recognizing parental immunity in this particular situation. First, this court found that the protection of family tranquility and harmony was not a valid reason to recognize parental immunity. Instead, the court found that denying a child damages for injuries caused by a negligent parent in an automobile accident would contribute to family disharmony and alienation, not prevent it. The court pointed out that it is the injury, not the lawsuit to recover damages for such injury, which causes disruption to harmonious family relationships. Thus, a lawsuit which allows the child to recover damages for such injury and make the child whole again might actually restore family harmony instead of disrupting it.

Therefore, this court found that the parental immunity doctrine in an automobile negligence case does nothing to preserve family harmony and might actually disrupt family harmony or at least hinder the family's recovery after an injury.

The *Nocktonick* court pointed out that most, if not all, negligent parents who might be sued by a minor for injuries resulting from a car accident would be covered by mandatory automobile liability insurance. Thus, family harmony is not really at risk in allowing such a lawsuit because most damages will be collected from the parent's insurance company, not the parent. If the child recovers damages by suing the negligent parent and the parent's insurance company, this money might ease any family financial difficulties surrounding the child's injuries. Thus, the suit might actually improve family harmony. Further, with mandatory liability insurance for all drivers, the fear that a parent's resources might be drained to pay damages to an injured child at the expense of the other children in the family is diminished. In fact, if the injured child is allowed to sue the negligent parent and the parent's insurance company, then the money recovered can go to pay for the injured child's medical expenses. In that case, the family's resources are saved so the resources can be spent on the other children in the family.

Finally, this court addressed the concern about collusion if a child is allowed to sue a negligent parent for injuries arising out of an automobile accident. This court stated:

"We recognize a practical problem is that of possible collusion between parent and child aimed at securing an unjustified recovery from an insurance company. But the possibility of collusion exists to a certain extent in any case. Every day we depend on juries and trial judges to sift evidence in order to determine the facts and arrive at proper verdicts. Experience has shown that the courts are quite adequate for this task. In litigation between parent and child, judges and juries would naturally be mindful of the relationship and would be even more on the alert for improper conduct. We further must recognize that, under provisions ordinarily included in an insurance policy, the insurance company has the right to disclaim liability when there is lack of cooperation with the insurance company on the part of the insured. Lack of cooperation may be found in inconsistent or contradictory statements by the insured or in collusion between the injured party and the insured which results in false statements to the company." 227 Kan. at 768-69.

The *Nocktonick* court also pointed out that the prevention of collusion was a claimed justification behind the Kansas guest statute. Nonetheless, such a concern was not enough to justify the guest statute, and this court held that the guest statute was unconstitutional. In so holding, this court found that it was "unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits." 227 Kan. at 769. Instead, the "courts must depend upon the efficiency of the judicial processes to ferret out the meritorious from the fraudulent in particular cases." 227 Kan. at 769. Since the concern of collusion was not enough to justify the guest statute and since there were other ways to deal with this concern, the *Nocktonick* court found that the concern about collusion was not enough to justify recognition of the parental immunity doctrine in this situation. Thus, this court allowed the child's suit against her negligent parent for injuries arising out of a car accident to go forward.

In holding that the parental immunity did not exist in the situation at issue, the *Nocktonick* court placed the following limitation on its holding:

"Our holding is limited to the factual circumstances of the case now before us—an automobile tort action brought by an unemancipated minor child against a parent. Allowance of such an action does not undermine parental authority and discipline nor does it threaten to substitute judicial discretion for parental discretion in the care and rearing of minor children. We recognize that there may be parental exercises of discretion and authority which should be provided special protection in a court of law. Here we merely remove any barrier to the enforcement of liability between parent and child in an automobile accident case brought by an unemancipated minor against a parent. When confronted with other cases involving claimed parental immunity, we will at that time determine to what extent parental immunity or privilege should be recognized under the particular circumstances of the case then before us." 227 Kan. at 769-70.

Since *Nocktonick* was decided in 1980, neither this court nor the Court of Appeals has decided another case concerning the parental immunity doctrine. However, this court did address the doctrine of interspousal immunity in *Flagg v. Loy*, 241 Kan. 216, 734 P.2d 1183 (1987). The *Flagg* court found that the traditional public policy concerns which were used to justify the interspousal immunity

doctrine—stare decisis, the preservation of family harmony, the prevention of collusion between spouses, and the absence of legislative action to abolish the doctrine—no longer supported the doctrine under a modern view of today's family. Thus, the court abrogated the doctrine of interspousal immunity. 241 Kan. at 224-25. These same policy concerns which justified the interspousal immunity doctrine are also used to justify the parental immunity doctrine. Since these public policy concerns no longer support the doctrine of interspousal immunity, *Flagg*, 241 Kan. 216, Amanda contends that they also do not support the doctrine of parental immunity. Amanda asserts that parental immunity is a judicial creation which is no longer supported by the public policy that originally justified it; thus, Amanda argues that parental immunity should not be recognized in this case.

On the other hand, the Bonins point out that one of the reasons the *Nocktonick* court chose not to recognize parental immunity in automobile negligence cases was that the potential parent/defendants would be covered by mandatory liability insurance. The availability of liability insurance weakened several of the public policy concerns which had previously justified parental immunity. For instance, with insurance, family harmony was not as much at risk because the child/plaintiff was actually recovering from the insurance company, not the parent. Further, other children in the family would not be left without money should the injured child win a damage award against the parent. Instead, this award would normally be paid by the parent's insurance company so the parent would still have all of his or her personal resources available to care for all of the children, not just the injured child.

Here, as the Bonins point out, mandatory insurance is not a factor. Amanda is suing her parents for failure to bring a timely action against Dr. Vannaman. Amanda apparently believes that if her parents are not immune and if she wins this negligence action, any damages awarded to Amanda will be paid by her parents' homeowner's insurance policy. We express no opinion whether error of omissions is covered by a homeowner's insurance policy. Moreover, most homeowner's insurance policies do not cover interfamily torts. Most importantly, not all parents have homeowner's

insurance. Homeowner's insurance is not mandatory. Thus, if this type of suit is allowed, a minor could sue his or her parent for failure to timely bring a medical malpractice action on the minor's behalf, and the minor's parent would most likely have to pay the minor's damage award directly out of the parent's pocket. If this occurs, then a minor would be directly suing a parent, possibly causing family disharmony. Further, the minor plaintiff's siblings might suffer economically because all of the parent's money is used to pay the plaintiff's damage award. Thus, the public policy concerns which were weakened in *Nocktonick* due to mandatory automobile liability insurance are at work in this case. As such, the Bonins contend that these public policy concerns weigh in favor of recognizing parental immunity in this case.

Kansas has never recognized the broad doctrine of parental immunity. *Nocktonick* made it clear that parental immunity does *not* apply when an unemancipated minor child sues a parent to recover damages for injuries arising out of the parent's negligent operation of an automobile. While Kansas did recognize the doctrine of interspousal immunity at one time, this court completely abrogated that doctrine in *Flagg*, 241 Kan. 216. Based on this precedent, Kansas is leaning toward the nonrecognition of family immunities.

However, *Nocktonick* made it clear that this court would decide whether parental immunity existed in a certain situation on a case-by-case basis. With this in mind, *Nocktonick* recognized that some parental immunity may be necessary so as not to "undermine parental authority and discipline nor . . . substitute judicial discretion for parental discretion in the care and rearing of minor children." 227 Kan. at 770. The *Nocktonick* court conceded that "there may be parental exercises of discretion and authority which should be provided special protection in a court of law." 227 Kan. at 770.

There are three different standards that different courts use to determine if parental immunity applies in a particular situation. The first standard is a case-by-case analysis. The second standard is an abrogation of immunity except in cases "[w]here the alleged negligent act involves an exercise of parental authority over the child" or "where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food,

clothing, housing, medical and dental services and other care," or where the alleged negligent act is based upon the parent's negligent entrustment of a dangerous instrumentality to a child. *Goller*, 20 Wis. 2d at 413; see *Holodook v. Spencer*, 36 N.Y.2d 35, 364 N.Y.S.2d 859, 324 N.E.2d 338 (1974). The third standard is a complete abrogation of parental immunity in all cases. The courts using this standard place the burden upon the jury to determine whether a parent was using reasonable parental discretion in disciplining, supervising, or raising a child, under the reasonable prudent parent standard, when the child's injury occurred. *Anderson v. Stream*, 295 N.W.2d 595, 599 (Minn. 1980). If so, then the parent is not liable for negligence. These courts favor the reasonable prudent parent standard over the immunity exceptions in order to avoid the arbitrary distinctions in discerning what parental conduct falls inside or outside of an immunity exception. Further, these cases find it offensive that once a parent falls into an immunity exception, then the parent may act negligently without fear of liability. See, e.g., *Gibson v. Gibson*, 3 Cal. 3d 914, 921, 92 Cal. Rptr. 288, 479 P.2d 648 (1971).

These standards are more fully discussed in Annot., 6 A.L.R.4th 1066. *Nocktonick* has already enumerated the standard to be used in Kansas—a presumption of no immunity except in cases where the exercise of parental discretion or authority is involved. This court will evaluate each claim of immunity on a case-by-case basis to determine whether the alleged act of negligence falls within the parental discretion exception and is protected by parental immunity.

A parent's decision regarding whether a child's medical condition should be investigated for signs of malpractice or whether a malpractice action should be pursued is an exercise of parental discretion regarding a child's medical condition and financial well-being in which a court should not interfere. The alleged acts of negligence by Amanda's parents in failing to investigate or pursue a medical malpractice action against Dr. Vannaman on Amanda's behalf are entitled to parental immunity.

If immunity for such actions is not provided, then a parent will always feel obligated to sue on behalf of his or her child, whether

or not the parent thinks it is the right decision for the family, in order to avoid being a defendant in a negligence action brought by the child. As a result, the court would indirectly be interfering in a very personal family decision. The best way to avoid this situation is to make parents immune from actions brought by a child alleging that a parent is negligent for failing to investigate or timely file a medical malpractice action on behalf of the child.

To allow such an action would substitute judicial discretion for parental discretion in the care of a minor child regarding medical decisions. Deciding whether a medical malpractice action should be pursued on behalf of a minor is an exercise of parental discretion which should be provided special protection in a court of law. See *Nocktonick*, 227 Kan. at 769-70.

This decision is not meant to limit this court's leaning in any way toward the nonrecognition of parental immunity. See *Nocktonick*, 227 Kan. 758; *Flagg*, 241 Kan. 216. In confronting cases of claimed parental immunity, the *Nocktonick* court said it would rule on a case-by-case basis. This case is one of those cases in which an exception to the general rule of no immunity should be recognized, and the Bonins should be afforded the protection of parental immunity.

Affirmed.