No. 94,648

WILLIAM J. KELLY, *Appellant/Cross-appellee*, v. WHITNEY L. VINZANT, M.D., *Appellee/Cross-appellant*.

(197 P.3d 803)

Opinion filed December 12, 2008.

*Susan R. Schrag*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Edward L. Robinson*, of the same firm, was with her on the briefs for appellant/cross-appellee.

*Jerry D. Hawkins*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause, and *Randy J. Troutt*, of the same firm, was with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises questions of whether a medical malpractice plaintiff may state a claim for fraud and for violations of the Kansas Consumer Protection Act (KCPA), K.S.A. 50-623 *et seq.*, after a jury found that the physician did not commit medical malpractice, and whether the statute of limitations for battery based upon a fraudulently obtained consent begins to run when the fraud is discovered or when the battery occurred.

We hold that where the alleged fraud occurs as part of the informed consent process during medical treatment, a common-law fraud claim may not be stated independent of the medical malpractice claim. On the other hand, a KCPA claim may be, and a defense verdict on the medical malpractice claim does not foreclose the KCPA claims, which in this case were severed for a separate trial. Finally, we hold the statute of limitations begins to run on a battery claim at the time of the touching, even if the consent leading to the touching was vitiated by fraud not discovered immediately. The legislature defines periods of limitations and has not provided an exception to or stated any circumstances extending the statute of limitations for battery based upon concealment of fraud or an inability to discover the battery.

## Facts

William J. Kelly's family physician, Dr. Edward Lind, examined a lump in Kelly's groin area. After diagnosing a hernia, Lind told Kelly he needed surgery and recommended two surgeons—Dr. Whitney L. VinZant and another doctor.

Kelly went to VinZant, who examined Kelly, confirmed the diagnosis of a hernia, and recommended surgery. VinZant described

the procedure he would perform to repair the hernia and gave Kelly a pamphlet explaining the surgery. On October 22, 1999, VinZant performed inguinal hernia surgery on Kelly.

At a follow-up visit on October 28, 1999, Kelly complained of soreness in his groin area and that his left testicle was missing. VinZant performed an examination and, according to Kelly, said, "There it is. It's right there at the base. It should drop . . . down where it belongs." Kelly asked whether VinZant had done something to cause the testicle to be missing. Kelly summarized Vin-Zant's response as, "All my surgeries are good; I do not do bad surgeries."

Kelly saw VinZant again on November 4, 1999. Kelly's groin pain was better, but his left testicle had still not dropped. Over the next 6 weeks, VinZant performed weekly examinations of Kelly; during this time, there was no change in Kelly's condition. Kelly then saw his family physician, Lind, and reported that his left testicle had not dropped since the hernia surgery. Lind called VinZant's office, and VinZant examined Kelly again. At that point, VinZant told Kelly he needed another surgery. VinZant explained that Kelly's testicle was in his body cavity and, if it was still functional, it could be pulled back down; if it was not functional, it would need to be removed because it could become cancerous.

On April 7, 2000, VinZant performed exploratory surgery and removed a mass of tissue, which he thought was the testicle. Subsequent testing revealed the tissue was not the testicle, and, on April 13, 2000, VinZant told Kelly another surgery was necessary.

After a sonogram was performed, VinZant performed a third surgery on April 15, 2000, and was able to locate and remove the necrotized testicle.

Two years later, on April 15, 2002, Kelly filed three separate lawsuits, each based on one of the three surgeries. All of the petitions contained a claim for medical malpractice based on allegations that the respective surgeries were performed negligently and/or without informed consent. The petitions relating to the last two surgeries each alleged common-law fraud based on VinZant's statement that "[a]ll my surgeries are good; I do not do bad surgeries"; battery in the form of the two subsequent surgeries, which Kelly

alleged were induced by the fraudulent statement; and violations of the KCPA based on the statement.

The district court consolidated the three lawsuits but bifurcated the proceedings, holding that the malpractice action would be tried first; then the common-law fraud, battery, and KCPA claims would be presented in a second, separate trial. Damage issues already decided in the first trial would not be relitigated.

Prior to trial, VinZant filed a motion for partial summary judgment on Kelly's KCPA, fraud, and battery claims. After a hearing, the district court granted summary judgment to VinZant on the KCPA claims, holding that under the rationale of *State ex rel. Stovall v. ConfiMed.com,* 272 Kan. 1313, 38 P.3d 707 (2002), the statements made by VinZant to Kelly in the context of an office visit did not constitute marketing and were not entrepreneurial in nature and therefore did not fall within the context of the KCPA. However, the district court declined to grant summary judgment on the two common-law fraud claims or two claims for battery based on fraudulently obtained consent.

The case proceeded to trial. VinZant's statement that "[a]ll my surgeries are good; I do not do bad surgeries" was not introduced at trial. Nor was there any evidence introduced concerning VinZant's record as a surgeon. The district court had held that such information would be inadmissible in the negligence trial under K.S.A. 60-455 as evidence of a prior civil wrong and would be reserved for the second trial on the fraud and battery claims.

The jury rendered a verdict in favor of VinZant by answering "No" to each of the following questions submitted to it:

"1. Do you find Defendant Whitney VinZant to be at fault in connection with the October 22, 1999 surgery?
"2. Do you find Defendant Whitney VinZant to be at fault in failing to perform imaging studies prior to the April 7, 2000 surgery?
"3. Do you find Defendant Whitney VinZant to be at fault in failing to inform Mr. Kelly of the potential risks of nerve damage prior to any of the operations?"

Following the verdict, the district court dismissed the fraud claims, holding "it would be inconsistent to ask the jury to go forward and to deliberate upon an allegation of fraud on all my sur-

geries are good, I don't do a bad surgery, . . . when in fact, the jury has found that he didn't do a bad one [in] this case." The district court also dismissed the battery claims based on fraudulently obtained consents, holding that the statute of limitations had expired. Finally, the district court denied motions for a judgment notwithstanding the verdict and for a new trial based on juror misrepresentations during voir dire and assessed various expenses as costs to Kelly.

Kelly appealed, arguing that the district court erred in granting partial summary judgment to VinZant on the KCPA claims; the district court erred in dismissing his fraud and battery claims following the defense verdict on his allegations of medical malpractice; and the district court abused its discretion in disallowing certain evidence, in denying Kelly's motion for a new trial based on juror misconduct, and in awarding certain costs and expenses. VinZant cross-appealed the district court's failure to grant summary judgment on the fraud claims.

In addressing Kelly's first argument, the Court of Appeals noted in *Kelly v. VinZant*, 2007 WL 1239300 (Kan. App. 2007) (unpublished opinion), that after the district court's ruling in this case regarding the KCPA, this court in *Williamson v. Amrani*, 283 Kan. 227, Syl. ¶ 1, 152 P.3d 60 (2007), held that "a physician providing care or treatment to a patient can be found to have engaged in deceptive acts and practices in violation of K.S.A. 50-626 and unconscionable acts and practices in violation of K.S.A. 50-627."

Nevertheless, the Court of Appeals concluded the district court correctly granted judgment on the KCPA claims, albeit for the wrong reason, because the issue of fraud was implicitly resolved by the jury's finding of no negligence. Under these facts, which the Court of Appeals stressed were unusual and unique, the alleged statement of fraud—"All my surgeries are good; I do not do bad surgeries"—was disproved with regard to Kelly as a result of the no-fault finding in the medical malpractice action, *i.e.*, the statement was not untrue because the surgeries were not performed negligently.

The Court of Appeals also upheld the district court's dismissal of the battery claims based on the applicable statute of limitations,

agreeing with the district court that " '[t]he fact that what looked like a consensual surgery is later determined to have been induced fraudulently vitiates the consent but doesn't change the time from which the battery occurred.' " Because the batteries occurred at the time of the second and third surgeries, the 1-year limitations period had expired prior to the filing of Kelly's petition.

Furthermore, the Court of Appeals held that Kelly did not properly preserve for appeal his argument that the district court abused its discretion in disallowing certain evidence; the district court did not abuse its discretion in denying Kelly's motion for a new trial based on juror misconduct; and the district court did not abuse its discretion in awarding certain costs and expenses.

Kelly filed a petition for review alleging the Court of Appeals erred in upholding the district court's rulings on the KCPA, fraud, and battery claims and maintaining that he was entitled to a new trial based on juror misconduct. This court granted review as to the rulings on the KCPA, fraud, and battery claims only and has jurisdiction pursuant to K.S.A. 22-3602(e) and K.S.A. 20-3018(b).

## STANDARD OF REVIEW

Procedurally, this appeal presents a unique situation in that the district court decided several of the issues after a jury trial on the medical malpractice claims. In essence, the district court considered whether the KCPA claims were valid and, in light of the jury verdict, whether Kelly stated claims for fraud or for battery. In reviewing the district court's resolution of these questions, the Court of Appeals applied the standard of review applicable when a claim is dismissed for failure to state a claim as a matter of law. Under this standard, the court must accept the facts alleged by the plaintiff as true, along with any inferences that can be reasonably drawn therefrom. The court then decides whether those facts and inferences state a claim based on the plaintiff's theory or any other possible theory. *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007). The parties do not dispute that this is the appropriate standard for our review.

In addition, the issue of whether the statute of limitations had expired on the battery claims presents an issue of law requiring the

interpretation of statutes. These matters present questions of law subject to our de novo review. See *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007) (statutory interpretation and other issue of law reviewed de novo); see also *Robbins v. City of Wichita*, 285 Kan. 455, 460, 172 P.3d 1187 (2007) (summary judgment standard).

## FRAUD

In determining that the jury verdict foreclosed Kelly's common-law fraud claims, the Court of Appeals enumerated the elements of an action for fraud, which require proof by clear and convincing evidence that: (1) false statements were made as a statement of existing and material fact; (2) the representations were known to be false by the party making them or were recklessly made without knowledge concerning them; (3) the representations were intentionally made for the purpose of inducing another party to act upon them; (4) the other party reasonably relied and acted upon the representations made; and (5) the other party sustained damage by relying upon them. See *Bomhoff v. Nelnet Loan Services, Inc.*, 279 Kan. 415, 421, 109 P.3d 1241 (2005); *DuShane v. Union Nat'l Bank*, 223 Kan. 755, 576 P.2d 674 (1978) (fraud may be based upon a suppression of facts the party is obligated to communicate); *Timi v. Prescott State Bank*, 220 Kan. 377, 389, 553 P.2d 315 (1976) (to constitute fraud, statements must relate to fact rather than mere opinions or puffing); *Wolf v. Brungardt*, 215 Kan. 272, 524 P.2d 726 (1974) (representation is material when relating to matter so substantial as to influence party to whom it was made); PIK Civ. 4th 127.40.

The Court of Appeals concluded some of these elements were not met, first noting that the statement was not necessarily untrue because Kelly's surgeries were not performed negligently. In addition, the panel stated:

"Perhaps the district court's rationale is better stated by saying Kelly did not justifiably rely on VinZant's statement to his detriment because the medical malpractice action failed. . . . It would not be consistent to say that the surgery was not done negligently and then require another trial to determine if Kelly was defrauded by having needed surgery performed in a nonnegligent manner. This would be akin to 'negligence in air' where alleged negligence has nothing to do

with possible damages. Only here, according to the jury, there was no negligence, although there were damages." *Kelly*, 2007 WL 1239300, at °4.

Kelly argues this analysis ignores the nature of his allegations. Specifically, in his petition, Kelly asserts that the "statement was a substantial contributing factor to Plaintiff's decision to continue to seek care and treatment from Defendant VinZant and to submit to the April 15, 2000 surgery." In other words, he alleges VinZant robbed him of his right to self-determination. See *Natanson v. Kline*, 186 Kan. 393, 406, 350 P.2d 1093, *reh. denied* 187 Kan. 186 (1960) ("Anglo-American law starts with the premise of thorough-going self determination.").

When the elements of fraud are viewed with this dignitary tort in mind, Kelly argues the elements of fraud were met because the statement "[a]ll my surgeries are good; I do not do bad surgeries" was a false statement of fact, VinZant knew all of his surgeries were not good, VinZant intended to discourage Kelly from going to another physician for a second opinion, Kelly reasonably relied upon the statement, and Kelly would have gone to a different surgeon and not allowed VinZant to touch him if Kelly had known of the bad results with other patients. Regarding damages, Kelly argues that he may recover damages for violation of his absolute right to have accurate information before consenting to VinZant performing any further surgeries on him. In addition, he emphasizes that he was precluded from introducing in the negligence trial the bulk of evidence he intended to present in support of the fraud and KCPA claims, *i.e.*, there were problems with surgeries performed by VinZant on other patients which had resulted in other claims against VinZant.

In response, VinZant raises several arguments as to why Kelly cannot establish these elements and, in addition, argues Kansas law does not allow a fraud claim founded on Kelly's theory; rather, the theory is subsumed in and subject to the rules governing a medical malpractice action based upon a lack of informed consent.

Regarding this latter point, in *Williamson* this court acknowledged a series of Kansas cases holding that "a plaintiff cannot bring a claim for breach of contract or fraud where the gravamen of the

claim is medical malpractice." 283 Kan. at 240; see *Bonin v. Vannaman*, 261 Kan. 199, 210-11, 929 P.2d 754 (1996) (plaintiff alleged physician failed to disclose information on a chest x-ray and failed to diagnose her condition; cause of action sounded in medical malpractice, not fraud, although conduct technically fulfilled elements of claim for fraud by silence; fraudulent concealment doctrine did not extend the statute of limitations); *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 374-76, 552 P.2d 885 (1976) (action for failure of medical center to furnish all needed treatment sounded in tort; action could not be characterized as one in contract in order to avoid bar of governmental immunity); *Travis v. Bishoff*, 143 Kan. 283, 284-85, 54 P.2d 955 (1936) (action against surgeon for failure to perform operation according to proper surgical practice was one for malpractice even though petition stated action was for breach of contract).

In *Bonin*, 261 Kan. 199, this court stated:

" ' "As malpractice covers every way in which a patient is injured through the dereliction of a doctor in his professional capacity, the approach, depending on the facts, can be through any of several familiar forms of action. But no matter what the approach, it remains an action for malpractice, not one for deceit, contract or anything else. A well recognized ground for recovery is where a physician represents that he has the skill to perform a certain operation when in fact he does not. This form of action requires the same elements of proof that an action in fraud requires, yet it could not be successfully disputed that as between the two it is an action for malpractice." ' [Citations omitted.]" 261 Kan. at 211.

However, by its own language, *Bonin* does not stand for the proposition that a doctor can never be liable for fraud or breach of contract:

"[Our holding] does not mean that a doctor can never be liable for fraud or breach of contract. Instead, this simply means that a fraud or breach of contract cause of action can only be based upon a physician's misconduct if that misconduct is beyond a breach of the legal duty which every doctor has the obligation to uphold. [Citation omitted.]" 261 Kan. at 210.

See also *Noel v. Proud*, 189 Kan. 6, Syl. ¶ 1, 367 P.2d 61 (1961) (patient's action against physician for alleged breach of express warranty that surgery would not worsen patient's condition did not raise allegations of negligence, gravamen not malpractice; subject

to 3-year statute of limitations on oral contracts, rather than 2-year statute for torts).

Indeed, there is also Kansas precedent holding that when alleged fraud occurs separately from and subsequent to the malpractice and gives rise to damages separate and distinct from those flowing from the malpractice, a plaintiff is entitled to allege and prove such a cause of action. Typically, these actions arise from fraudulent statements intended to conceal malpractice. See *Robinson v. Shah*, 23 Kan. App. 2d 812, 936 P.2d 784 (1997).

In arguing that VinZant's fraud prevented the exercise of self-determination, Kelly does not allege the fraud was designed to conceal malpractice or arose independent of the course of treatment or the consent to allow that treatment. Rather, he focuses upon the fraud as an inducement to allow the subsequent surgeries, surgeries which he argues were batteries because of the fraudulent statements. This claim goes to one of the fundamental facets of the physician-patient relationship—informed consent.

As *Bonin* states, when fraud is a part of the informed consent process, the claim is for malpractice, not fraud. *Bonin* specifically noted a patient could not state an independent claim based upon a physician's false representation that he or she possessed a skill. Essentially, Kelly makes the same allegation, *i.e.*, that VinZant represented his skill was such that he performed only good surgeries. See, *e.g.*, *Ditto v. McCurdy*, 86 Hawaii 84, 90-91, 947 P.2d 952 (1997) (failure to disclose lack of board certification as plastic surgeon, as opposed to other board certifications possessed, did not render doctor liable for fraud); *Paulos v. Johnson*, 597 N.W.2d 316, 320 (Minn. App. 1999) (allegation of misrepresentation stating physician was board certified is not actionable as independent fraud claim); *Howard v. University of Medicine*, 172 N.J. 537, 553-54, 800 A.2d 73 (2002) (fraud cause of action not allowed based upon surgeon's misrepresentation of qualifications and credentials).

The conclusion that the claim sounds in medical malpractice, not fraud, does not change even if the fraud vitiates the consent, according to this court's holding in *Funke v. Fieldman*, 212 Kan. 524, 512 P.2d 539 (1973). In that case, a physician anesthesiologist

informed a patient that headaches were the only risk related to a spinal anesthesia. In fact, there are other risks, many of which are far greater in severity than a headache. Hence, the physician "misinformed and misled" the patient, and the "the misleading statement was equivalent to a false statement by [the physician] and vitiated [the patient's] consent." 212 Kan. at 535. Nevertheless, the court determined the patient must prove the elements of a malpractice action. See 212 Kan. at 535-36.

Consistent with these authorities, we hold that under Kelly's theory that VinZant's fraudulent misrepresentation of his skill vitiated Kelly's consent to treatment, Kelly did not state a claim for fraud but for medical malpractice based upon a lack of informed consent.

In addition, to the extent Kelly's claim of fraud can be interpreted as an attempt to conceal malpractice or as otherwise being independent of the treatment process, the district court's and Court of Appeals' analyses are directly applicable. Both of these courts concluded the jury's verdict establishes that Kelly's reliance on the statement did not result in a detriment—there was no malpractice to conceal and the subsequent treatment did not result in harm. The only harm Kelly points to is the intangible harm of his not being able to exercise his self-determination in a knowing manner. As discussed, this harm is subsumed in the malpractice claims.

The district court did not err in dismissing Kelly's common-law fraud claims.

## KCPA

In addition to the common-law fraud claims, Kelly's petitions alleged that VinZant's statement "[a]ll my surgeries are good; I do not do bad surgeries" constituted a "deceptive" or "unconscionable act or practice" in violation of the KCPA. These claims, in contrast to a common-law fraud claim that cannot be stated independent of a claim for medical malpractice, are based upon a statutorily created cause of action providing a remedy even in situations where a different remedy, including a medical malpractice claim, may also be available. See *Williamson*, 283 Kan. at 241-42.

Nevertheless, both the district court and Court of Appeals concluded the KCPA claims could be dismissed as a matter of law, although the two courts reached the conclusion on different grounds: The district court ruled the KCPA did not apply when a physician was providing medical care to a patient; the Court of Appeals concluded the jury's verdict precluded the KCPA claims.

*District Court Rationale*

As noted by the Court of Appeals, this court's holding in *Williamson*—i.e., a physician providing care or treatment to a patient can be considered a supplier of services who is potentially liable for violations of the KCPA—reveals the error in the district court's grant of summary judgment to VinZant on the KCPA claims.

In *Williamson*, Tracy Williamson brought an action against her orthopedic surgeon pursuant to the KCPA based on a claim that the surgeon engaged in unconscionable and deceptive acts and practices by willfully misrepresenting or concealing material facts regarding his lack of success rate with respect to the back surgery he had recommended to her. Specifically, Williamson alleged that her surgeon represented that the surgery he was recommending had a high likelihood of successfully relieving her pain when, in fact, that surgery had been unsuccessful in the majority of cases where he had performed the same procedure. The district court granted summary judgment, finding that the KCPA did not apply to a medical provider's professional care and treatment of a patient.

Before this court, Williamson made the same arguments Kelly made to the district court. In *Williamson,* this court reversed the grant of summary judgment, holding that the plain language of the KCPA was broad enough to encompass medical care and treatment services provided within a physician-patient relationship; the KCPA did not provide an exemption for medical providers; a physician can be found to have engaged in deceptive acts and practices, K.S.A. 50-626, or unconscionable acts and practices, K.S.A. 50-627; the KCPA applied to Williamson's claim that her surgeon willfully misrepresented or concealed material facts regarding his success rate with the back surgery; and, under K.S.A. 50-626(b)(3), proof of an allegation that a physician has willfully failed to state a ma-

terial fact or has willfully concealed a material fact requires expert testimony to establish the disclosures that would be made by a reasonable medical practitioner under the same or like circumstances. 280 Kan. at 232, 240, 242, 244, 246.

A question arises, however, whether an intervening statutory amendment, which effectively overruled *Williamson*, applies to this case. Effective May 24, 2007, the legislature amended the KCPA to specifically exclude medical professionals from its coverage. L. 2007, ch. 194, sec. 1 (H.B. 2451). K.S.A. 2007 Supp. 50-635(b) now reads:

> "The Kansas consumer protection act does not allow for a private cause of action or remedy against a licensed health care provider for causes of action for personal injury or death resulting, or alleged to have resulted, from medical negligence. For purposes of this subsection, 'health care provider' shall have the same meaning as provided in subsection (a)(1) of K.S.A. 65-4915, and amendments thereto."

Our consideration of whether the provision applies to this case—in other words, whether it applies retroactively—is governed by two general rules. First, a statutory amendment operates prospectively unless the language of the statute clearly shows that it is the intention of the legislature that it operate retroactively. Second, even if there is a clear indication the legislature intends the amendment to operate retroactively, it will not be applied if doing so interferes with vested, substantive rights. *Owen Lumber Co. v. Chartrand*, 276 Kan. 218, 220-21, 73 P.3d 753 (2003); *Olathe Community Hospital v. Kansas Corporation Comm'n*, 232 Kan. 161, 166, 652 P.2d 726 (1982); *Jones v. Garrett*, 192 Kan. 109, 115, 386 P.2d 194 (1963).

Applying these rules to this provision, we conclude the 2007 amendment to K.S.A. 50-635(b)—*i.e.*, K.S.A. 2007 Supp. 50-635(b)—cannot be applied retroactively. The legislature did not express or evidence a clear intent that the amendment was to be retroactive, and the amendment is substantive and is not merely procedural because the amendment excludes one class of "suppliers" previously covered by the KCPA. Consequently, the amendment would terminate the substantive rights of litigants in pending cases filed under the prior version of the KCPA.

Hence, our holding in *Williamson* applies to this case, and an application of *Williamson* reveals that the district court erred in granting summary judgment to VinZant on Kelly's KCPA claims on the basis that the KCPA had no application on the facts.

*Court of Appeals*

Nevertheless, we must consider the Court of Appeals' conclusion that the district court was right for the wrong reason because the jury's resolution of the malpractice action prevented Kelly from proceeding on the fraud and KCPA claims. See *Drake v. Kansas Dept. of Revenue*, 272 Kan. 231, 239, 32 P.3d 705 (2001) (decision will be upheld even though wrong ground relied upon if result was correct).

As previously discussed, the Court of Appeals considered the fraud and KCPA claims together, rejecting the claims on several grounds. Two of these grounds have already been discussed: (1) The alleged statement of fraud was disproved with regard to Kelly as a result of the no-fault finding in the medical malpractice action and (2) "Kelly did not justifiably rely on VinZant's statement to his detriment because the medical malpractice action failed." In addition, the Court of Appeals concluded that "where there are no damages, this discussion is academic." *Kelly*, 2007 WL 1239300, at *4-5.

In reaching these conclusions, the Court of Appeals noted that there are several significant differences between a statutory KCPA claim and one sounding in common-law fraud. For example, the KCPA prohibits deceptive acts and practices in regard to consumer transactions whether or not a consumer was in fact misled. K.S.A. 50-626(b); PIK Civ. 4th 129.01. In addition, the burden of proof differs; KCPA claims may be established by a preponderance rather than clear and convincing evidence applied to common-law fraud claims. See *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan. App. 2d 47, 913 P.2d 209 (1995); PIK Civ. 4th 129.02. Similarly, there are differences between a claim under the KCPA and negligence; in fact, there is little (or no) similarity between a KCPA claim and a medical malpractice negligence claim. Thus, it is pos-

sible for Kelly to prove a claim under the KCPA even if he cannot prove a negligence or common-law fraud claim.

In considering the specifics of this action, there are several statutorily defined deceptive acts and practices that are potentially applicable to the statement that "[a]ll my surgeries are good; I do not do bad surgeries." First, "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact" is a violation. K.S.A. 50-626(b)(2). Second, "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact" meets the definition of a deceptive act or practice. K.S.A. 50-626(b)(3). Finally, the statement could be considered an unconscionable act if "(1) [t]he supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor" or "(6) the supplier made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment." K.S.A. 50-627(b)(3), (6).

Obviously, the jury did not consider the elements of these provisions. Instead, after hearing, *inter alia*, expert testimony concerning the standard of care, the anatomy of a hernia, the operating procedure, and VinZant's defense, the jury concluded that VinZant was not at fault in connection with the October 22, 1999, surgery (the first of the three); for failing to perform imaging studies prior to the April 7, 2000, surgery (the second surgery); or in failing to inform Kelly of the potential risks of nerve damage prior to any of the surgeries.

Yet, to the extent the statement "[a]ll my surgeries are good; I do not do a bad surgery" is considered as meaning "I do not commit malpractice" or as an attempt to conceal malpractice, the Court of Appeals is correct that the verdict answers that there was no malpractice and nothing to conceal. Thus, the verdict negates an allegation that VinZant made "[r]epresentations made knowingly or with reason to know that . . . services have . . . characteristics, . . . benefits or quantities that they do not have" or that "services

are of particular standard [or] quality . . . which differs materially from the representation." K.S.A. 50-626(b)(1)(A), (D).

On the other hand, when considering Kelly's argument that the allegedly false statement induced his consent to the subsequent surgeries, nothing inherent in the answers supplied by the jury on the special verdict form answers whether VinZant's statement violated the KCPA. That is, the jury was not asked, nor does its verdict tell us, whether VinZant willfully exaggerated a material fact, K.S.A. 50-626(b)(2), or concealed a material fact, K.S.A. 50-626(b)(3). Nor does the jury's verdict resolve whether VinZant "took advantage" of Kelly's inability to protect his own interest because of his ignorance of VinZant's procedure or surgical track record, a potential ground for unconscionability, which is a question for the court. See K.S.A. 50-627(b)(1), (6); *Williamson v. Amrani*, 283 Kan. 227, 152 P.3d 60 (2007).

Consequently, the jury's conclusion that VinZant did not commit negligence in performing either the second or third surgeries is not necessarily determinative of whether any violations of the KCPA occurred.

The other reason cited by the Court of Appeals for upholding the judgment on the KCPA claims was that "where there are no damages, this discussion in academic." *Kelly*, 2007 WL 1239300, at *5. There are at least two flaws in this conclusion. First, the jury's verdict does not eliminate the possibility that Kelly suffered damages. By finding no negligence, the jury may have agreed that VinZant did not breach his standard of care. Or it may have concluded that any breach of the standard of care in the first surgery, or in failing to perform imaging studies prior to the second surgery, or in failing to inform Kelly of the potential risks of nerve damage was not the proximate cause of Kelly's injuries. These conclusions do not foreclose the possibility of damages that could be recoverable on a ground other than negligence.

Second, the KCPA allows recovery for damages apart from those recoverable in a successful medical malpractice claim. K.S.A. 50-634 allows recovery for damages or civil penalties, whichever is greater, and for attorneys fees for KCPA violations; see PIK Civ. 4th 171.02 (types of damages allowed in personal injury suit); PIK

Civ. 4th 171.44 (punitive damages); see also *Lantz v. City of Lawrence*, 232 Kan. 492, 500-01, 657 P.2d 539 (1983) (stating circumstances in which Kansas case law permits recovery of damages for mental distress without physical injury).

To recover these damages, a party must establish that he or she was aggrieved by a violation of the KCPA. K.S.A. 50-634; *Finstad v. Washburn University*, 252 Kan. 465, 845 P.2d 685 (1993). As stated in *Findstad*: " ' "A party is aggrieved whose legal right is invaded by an act complained of or whose pecuniary interest is directly affected by the order." ' [Citation omitted]." 252 Kan. at 472. Kelly alleges his right to self-determination was invaded by VinZant and he suffered damages as a result.

Hence, we conclude the Court of Appeals erred in holding that Kelly's KCPA claims could be dismissed as a matter of law because of the jury verdict, and we reverse.

We note that VinZant raised several other arguments regarding the viability of Kelly's KCPA claims and the nature of Kelly's damages. Because of the nature of the district court's decision, these issues were not developed on appeal, are not subject to the petition for review, and are not framed for our resolution. We, therefore, remand to the district court for further proceedings on Kelly's KCPA claims.

## BATTERY

Kelly alleges VinZant committed batteries by performing surgery on April 7 and April 15, 2000. It was not until April 15, 2002, that Kelly filed his lawsuits. Obviously, this means the two actions were not timely filed if the 1-year statute of limitations for battery, K.S.A. 60-514(b), applies and if the statute began to run when the surgeries occurred and was not tolled. Kelly seeks to avoid this result by arguing the statute of limitations was tolled because he was not aware of VinZant's fraud and it was the fraud that invalidated his consent to the surgeries. As Kelly notes, while K.S.A. 60-513(a)(3) states that a cause of action for fraud shall not be deemed to have accrued until the fraud is discovered, K.S.A. 60-514(b) is silent as to the moment when a cause of action for battery accrues. Kelly

argues, in part, that the fraud discovery provision should be grafted onto the battery statute of limitations.

The district court rejected this argument, concluding the 1-year battery limitation applied without any tolling, and dismissed Kelly's battery claims based on the statute of limitations. The Court of Appeals agreed with this conclusion.

As a preliminary matter, part of Kelly's argument that the district court erred in dismissing the battery claims relies on a "Tolling Agreement" allegedly reached by the parties early in the litigation. This agreement does not appear in the record on appeal. An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails. *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007).

In addition, Kelly argues also that the district court and Court of Appeals erred in ruling that the statute of limitations for battery is not subject to tolling based on the fraud. Although Kelly agrees that consent is a defense to battery, see *Charley v. Cameron*, 215 Kan. 750, 757, 528 P.2d 1205 (1974), and admits that he gave consent to VinZant to perform the second and third surgeries, he asserts where consent is initially given but has been procured by fraud it is invalid and an action for battery will lie. See *Spikes v. Heath*, 175 Ga. App. 187, 189-90, 332 S.E.2d 889 (1985), *superceded by statute as stated in Albany Urology v. Cleveland*, 272 Ga. 296, 528 S.E.2d 777 (2000); 6 Am. Jur. 2d, Assault and Battery § 118 (consent is ineffective and does not provide a defense where it is obtained by fraud or duress); Restatement (Second) of Torts § 892B (1977). Building upon this legal foundation, he argues his consent to the batteries (the second and third surgeries) was induced by VinZant's statement that "[a]ll my surgeries are good; I do not do bad surgeries" and it was only once the fraudulent character of that statement was discovered that the limitations period began running. In other words, Kelly asks this court to apply the limitations period applicable to a fraud claim to his battery claims, because fraud is an "indispensable element" of those claims.

To support his argument, Kelly cites *Spitler v. Dean*, 148 Wis. 2d 630, 436 N.W.2d 308 (1989), in which the Wisconsin Supreme

Court held " '[t]he statute [of limitations] should not commence to run until the plaintiff with due diligence knows to a reasonable probability of injury, its nature, its cause, and the identity of the allegedly responsible defendant.' [Citation omitted.]" 148 Wis. 2d at 635.

VinZant counters that this creative cause of action—battery by fraud—is not legally supported by Kansas law. Specifically, he argues that fraud and battery are distinct theories of recovery. The statute of limitations for battery is 1 year and accrues at the time of the battery. The statute of limitations for fraud is 2 years and accrues at the time the fraud is discovered.

We agree with VinZant's position. Our law is clear: A cause of action for battery accrues when, as the district court stated, "the scalpel is put to the skin." Further, " ' "[t]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done." ' [Citations omitted.]" *Baska v. Scherzer*, 283 Kan. 750, 766, 156 P.3d 617 (2007).

The legislature defines periods of limitations and, in several instances, has provided that the action does not accrue until discovered. The obvious example is the fraud limitations provision which states the "cause of action shall not be deemed to have accrued until the fraud is discovered." K.S.A. 60-513(a)(3). Similarly, K.S.A. 60-513(b), which applies to "[a K.S.A. 60-513(a)(7)] cause of action arising out of the rendering of or the failure to render professional services by a health care provider" (and which is not relied upon by Kelly), provides the 2-year limitations period

"shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. 60-513(b).

In contrast, however, the battery limitations provision does not contain any similar language, merely providing an action for battery shall be brought within 1 year. K.S.A. 60-514(b). Kelly asks us to

graft an exception onto K.S.A. 60-514 such as the legislature has provided in K.S.A. 60-513. That argument belongs in the legislature, not here.

Applying the statute as written, we hold the statute of limitations begins to run on a battery claim at the time of a touching, even if a consent leading to the touching was vitiated by fraud not discovered immediately. The legislature has not provided an exception to or stated any circumstances extending the statute of limitations for battery based upon concealment of fraud or an inability to discover the battery.

One final consideration is whether the gravaman of Kelly's causes of action is battery or fraud. Although Kelly alleges battery by fraud in his petition, calling for the application of a 2-year statute of limitations, "this court is not bound by the claims as set forth in the petition. Instead, ' "[t]he law of this state is realistic. Substance prevails over form." ' [Citations omitted.]" *Baska*, 283 Kan. at 755. Kelly's "battery by fraud" claims seek damages arising from the surgeries themselves, that is, from the alleged unlawful touchings that occurred April 7, 2000, and April 15, 2000. Those causes of action accrued at the times of the touchings. The alleged fraud does not resurrect the otherwise expired claims of battery or prevent their accrual.

Affirmed in part, reversed in part, and remanded to the district court with directions.