NOT DESIGNATED FOR PUBLICATION

No. 128,301

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
ASHLIA BREANE BARQUIST,
*Appellant*,

and

RYAN PAUL BARQUIST,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN BOSCH, judge. Submitted without oral argument. Opinion filed November 7, 2025. Affirmed.

*Richard A. Pinaire*, of Hoover, Schermerhorn, Edwards, Pinaire & Rombold, of Junction City, for appellant.

*Jonathan Sternberg* and *Bryan Cox*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

PER CURIAM: Ashlia and Ryan Barquist divorced in 2024. At the time of their divorce, and for nearly the entirety of their 13-year marriage, Ryan was serving in the Army and worked as a military air traffic controller and Ashlia was working as a daycare provider. Ashlia requested spousal maintenance in the amount of $2,800 per month for 72 months, which also included child support. After a trial on the issue, the district court ordered Ryan to pay spousal maintenance in the amount of $1,500 for 56 months plus

1

$275 monthly in child support. Ashlia appeals, arguing the district court abused its discretion in the order primarily because of the length of the marriage and the disparity in the parties' current income levels and future earning potential. After review, we affirm the district court's order. Additionally, we deny Ryan's motion for attorney fees associated with this appeal.

## FACTUAL AND PROCEDURAL HISTORY

*Background of the Marriage and Parties*

Ashlia and Ryan married in 2011. During their marriage, they had two children. At the time of their divorce, they were both 35 years old.

For nearly the entirety of their marriage, Ryan was an active-duty member of the United States Army. He entered the military two months after the couple married. During the marriage, Ryan also earned his bachelor's degree. In the Army, he worked as an air traffic controller, with an annual income of just under $100,000.

Throughout the marriage, Ashlia worked as a daycare provider and owned a t-shirt printing business while Ryan (and the family) was stationed in Alaska and Alabama. Her income is noted as $14.25 per hour for approximately 32 hours a week, which equates to an estimated annual gross income of $23,712. She has a high school diploma.

*Divorce Proceedings*

In May 2023, Ashlia filed for divorce and Ryan filed a cross-petition for divorce.

Both moved for preliminary orders, which the district court heard and decided in November 2023. In the preliminary order, the district court ordered the parties to follow a

previously agreed-to two-two-three parenting time plan. The parties contested the amount of temporary spousal and child support. Ryan sought to pay $743 per month in spousal maintenance and $357 per month in child support, for a total support obligation of $1,100 per month. Ashlia sought to receive $2,288 in spousal maintenance and child support combined for the first two months and then $2,056 per month thereafter.

Ultimately, the district court entered a preliminary support order of $1,500 per month in temporary spousal maintenance and $205 per month in temporary child support, which resulted in Ryan being ordered to pay a temporary monthly support obligation totaling $1,705.

The district court also entered a preliminary order regarding the proceeds from the sale of the parties' house in Alabama, which had resulted in proceeds totaling $70,830. The district court ordered $25,000 to each Ashlia and Ryan to pay off specific high-interest debts. The debts Ryan was ordered to pay off totaled more than those the district court ordered Ashlia to pay off. The remainder of the proceeds remained undispersed at that time.

A trial was held on disputed permanent orders—mainly Ryan's maintenance and support obligations.

Before trial, the parties agreed to a week-on-week-off parenting time plan, meaning the two had equal custody. The district court approved this plan.

*Trial Over Disputed Terms*

The disputed terms proceeded to a bench trial on February 29, 2024. Unfortunately, no transcript of the trial appears in the record on appeal because Ashlia, the appellant, failed to request such a transcript.

3

Prior to trial, the parties submitted their final domestic relations affidavits. Ashlia claimed $1,875 in gross monthly income, $1,675 in net monthly income, and monthly expenses of $4,297.10. Ryan claimed $7,621.18 in gross monthly income, $6,533.51 in net monthly income, and monthly expenses of $3,182.96. Ashlia's monthly expenses included the total amount of childcare costs, which the two had agreed to split. She also included $115 for children's activities and an unspecified "[m]iscellaneous" expense of $200.

The district court took the matter under advisement.

*Judgment and Decree*

A few days after the bench trial, the district court issued an oral ruling which was subsequently memorialized in the divorce decree.

During its oral ruling, the district court began by addressing the property division by applying the ten factors in K.S.A. 23-2802(c), which provide considerations for the district court when dividing property in a divorce proceeding, because it would affect the amount of spousal maintenance awarded.

For the first two factors—age of the parties and the duration of the marriage—the district court noted that both Ashlia and Ryan were 35 years old and the marriage lasted 13 years and 1 month, which totaled 157 months.

For the third factor—the property owned by the parties—the district court found the owned property included the house they had sold in Alabama (and the proceeds therefrom), personal property left in the marital home, some computer equipment Ryan used, two vehicles, and Ryan's potential military retirement, should he continue serving in the military for another seven years.

4

For the fourth factor—Ashlia's and Ryan's present and future earning capacities—the district court found that Ryan could continue to make around $100,000 either in his current military job or as a civilian air traffic controller, while Ashlia lacked higher education and works as a daycare provider approximately 32 hours a week, earing $14.25 an hour. The district court concluded that there was "a great disparity between the earning capacities, present and future, of the parties."

For the fifth factor—the time, source and manner of acquisition of property—the district court found that this factor did not weigh in its consideration because Ryan and Ashlia had married in their early 20s when they both lacked significant assets and there was no evidence of special circumstances for any of the property.

For the sixth factor—family ties and obligations—the district court noted the realities of military life for both the enlisted member and their immediate family, which necessitates moving to follow the military member to his or her postings at great sacrifice.

For the seventh factor—the allowance of maintenance or lack thereof—the district court judge stated he would pronounce the support ruling after explaining his findings on each of the property division factors but noted that Ryan proposed $743 per month in spousal maintenance for 36 or 48 months and Ashlia had requested $2,800 in combined spousal maintenance and child support from Ryan for 72 months.

For the eighth, ninth, and tenth factors—dissipation of assets, the tax consequences of the property division upon the respective economic circumstances of the parties, and such other factors as the court considers necessary to make a just and reasonable division of property, respectively—the district court found that there had been no dissipation of the assets, that there were no tax consequences as to the property itself, and that there were no other factors to consider other than that the district court would be

5

awarding spousal maintenance, which impacted the property division (and vice versa, as the property division impacted the spousal maintenance amount).

After discussing the property division factors but not yet issuing its ruling on the division of the property, the district court moved to spousal support because each of these considerations affected the other. First, the district court considered the parties' overall financial situation, including obligations to pay child support, and acknowledged that because the parties had agreed to equal custody, Ryan's child support obligations would be low. Second, the district court considered the contribution or sacrifice by one party to aid the other's education or career and found that Ashlia had sacrificed and aided Ryan's career due to the nature of military service and the demands that shifting postings place on military families. Third, the district court considered whether there had been gross or extreme misconduct and found there had not been.

The district court then found that there had been a disparity in the amount of property the parties would receive, with Ashlia being awarded more based on the current division of assets, the value of their respective vehicles, and the various debts each party paid after the divorce proceedings began. Under the division of assets up to that point, Ashlia had thus far received between $20,000 and $30,000 more than Ryan. In making that finding, the district court relied on Exhibits 22 and 23, which Ashlia did not designate to be in the record on appeal. The district court found that Ryan's income was "not really in dispute" and was $8,031 per month; it found Ashlia's income to be $1,976 per month, meaning Ryan's monthly income was $6,055 more than Ashlia's.

With these considerations in mind, the district court awarded Ashlia monthly spousal maintenance of $1,500 for 56 months. The district court judge stated he determined the duration of the maintenance obligation by taking the total length of the marriage—157 months—and awarding 24 months of maintenance for the first 60 months of marriage and 32 months for the additional 97 months of marriage. The district court

6

judge explained he based the maintenance amount on an approximation of 25% of the difference between the parties' incomes. The district court gave no credit for the previously ordered temporary spousal maintenance. The district court also ordered that the spousal maintenance terminates upon either party's death or Ashlia remarrying or cohabitating in a marital-like relationship.

The district court then returned to the distribution of the property. It ordered Ryan to name the two marital children as beneficiaries of his life insurance. Ashlia requested to be awarded Ryan's military education benefits, which can only be assigned once. The district court also denied Ashlia's request for survivor benefits. It granted her a fractional share of any military retirement benefits based on a formula reflecting the 155 months that the parties' marriage had coincided with Ryan's military service.

Ashlia and Ryan had agreed to the distribution of most of their personal property, such as their vehicles and cash accounts, so the district court ordered division of that property based on their agreement. However, they had not agreed on the distribution of the remaining proceeds of the sale of their Alabama house that had not previously been distributed by the temporary orders, which totaled $20,830. Ryan requested to receive all the remaining proceeds because of the disparity in the property awards between the parties. Instead, the district court awarded Ryan $3,959 from the proceeds to pay a debt owed to his parents related to the sale of the house and then split the remaining proceeds equally between Ashlia and Ryan.

Last, the district court ordered the parties to prepare a child support worksheet with the updated information regarding the spousal maintenance. Then, after the hearing, the district court incorporated the newly calculated child support payment—$275 per month—into its final written order. So, Ryan's total monthly support obligation totaled $1,775.

*Motion to Amend*

After the district court entered the divorce decree, Ashlia filed a timely motion to amend. In that motion, she requested the district court increase the spousal maintenance award by $300 per month and extend its duration from 56 months to 121 months. She made no request for the modification of the child support total.

The district court denied Ashlia's motion to amend, holding that she did not allege any new evidence or other legal basis for why the decree should be amended. The district court stated that sufficient evidence presented at trial supported its findings and judgment and that the judgment was fair, just, and equitable.

*This Appeal and Ryan's Motion for Attorney Fees*

Ashlia timely appealed to this court.

In this court, Ryan filed a motion requesting this court award him attorney fees related to defending against Ashlia's appeal, totaling $11,035. In that motion, he argues that Ashlia's appeal is "obviously without merit," but she "dragged [him] through it anyway," so ordering Ashlia to pay his attorney fees incurred for the appeal is just and proper. Ryan attached an affidavit including a billing accounting and a statement of reasonableness of the fees.

Ashlia's attorney responded to this motion. The response argues that Ashlia also requested attorney fees before the district court associated with the divorce proceedings, but the district court did not award those fees. Her counsel maintains that given the disparity in the parties' education, experience, and present and potential earnings, an appeal arguing that the spousal maintenance award was unreasonable was not unreasonable. Additionally, Ashlia's attorney attested that the appeal was taken pro bono

because she did not have money for additional attorney fees, nor did she have funds for a transcript of the bench trial. Because of this, appellate counsel elected to use the contents of the divorce decree and the transcript of the ruling to demonstrate that the amount of spousal maintenance was an abuse of discretion.

ANALYSIS

On appeal, Ashlia argues that the district court abused its discretion in its order of spousal maintenance. She asserts the amount was unreasonable given the disparity between her education, work experience, and current and future earning potential. She argues that the district court should have ordered an additional $335 in spousal support and extend it for 121 months instead of 56 months.

In response, Ryan makes two primary arguments. First, he argues that this panel should dismiss the appeal because Ashlia failed to designate a record on appeal that allows this court to conduct a meaningful review of Ashlia's claimed error. Second, substantively, he argues that the district court did not abuse its discretion because the award was fair, just, and equitable.

A.    *Our standard of review is an abuse of discretion.*

"The district court has wide discretion regarding spousal maintenance, and an appellate court will only disturb a judgment regarding maintenance if there was a clear abuse of discretion." *In re Marriage of Hair*, 40 Kan. App. 2d 475, 483, 193 P.3d 504 (2008). Even so, the trial court must comply with the statutes authorizing spousal maintenance, and the failure to do so is a reversible error. 40 Kan. App. 2d at 483-84. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. The party asserting the district court abused its discretion bears the burden of showing such

abuse of discretion. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). Here, Ashlia does not argue the district court made an error of fact or an error of law, so the only remaining basis for her to show the district court abused its discretion is if the spousal maintenance award was arbitrary, fanciful, or unreasonable. "Discretion is considered to have been abused only when *no* reasonable person would take the view adopted by the trial court." (Emphasis added.) *In re Marriage of Larson*, 257 Kan. 456, 463, 894 P.2d 809 (1995).

B.      *The record on appeal does not preclude meaningful review to the point dismissal of this appeal is necessary.*

First, Ryan argues that this case should be dismissed because Ashlia failed to designate a record on appeal that allows this panel to conduct a meaningful review of the alleged error on appeal. Ashlia did not respond to this argument.

Here, Ashlia did not request a transcript of the bench trial at which the district court heard evidence on the matter of the requested spousal maintenance, nor did she designate the exhibits admitted at the bench trial to be included in the record on appeal.

An adequate factual record is required to conduct meaningful appellate review of an issue. A party challenging the ruling of the district court is responsible for developing an adequate record for appeal. See *Kelly v. VinZant*, 287 Kan. 509, 526, 197 P.3d 803 (2008) ("An appellant has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails."); see also K.S.A. 60-2104 (content and preparation of record on appeal governed by Kansas Supreme Court rules); Kansas Supreme Court Rule 3.03(a) (2025 Kan. S. Ct. R. at 22) (appellant's duty to request any transcripts necessary for appeal).

While this panel does not have a transcript of the bench trial, it does have a transcript of the district court's lengthy oral pronouncement of the resolution of the spousal support award, during which the district court explained its rationale for its award and the evidence supporting it. We find it significant that neither party objected to the summary of the evidence at the hearing. And we also note that Ashlia has the burden of establishing the court abused its discretion. We conclude that while not ideal, we do not feel hampered by relying on the divorce decree and the district court's oral explanation of its ruling. Accordingly, we deny Ryan's motion to dismiss the appeal.

C.    *The district court did not abuse its discretion in its order of spousal maintenance.*

Under K.S.A. 23-2902(a), the district court may order spousal maintenance "in an amount the court finds to be fair, just and equitable under all of the circumstances." The purpose of spousal maintenance is to provide for the future support of the divorced spouse, and the amount of maintenance is based on the needs of one of the parties and the ability of the other party to pay. *Carlton v. Carlton*, 217 Kan. 681, 681, 538 P.2d 727 (1975); In Kansas, spousal maintenance is predicated upon financial need and financial ability. See *In re Marriage of Sommers*, 246 Kan. 652, 658, 792 P.2d 1005 (1990).

When determining the need and amount of maintenance, the district court may consider the following factors: (1) the age of the parties; (2) the parties' present and prospective earning capacities; (3) the length of the marriage; (4) the property owned by each party; (5) the needs of the parties; (6) the time, source, and manner of acquisition of property; (7) family ties and obligations; and (8) the overall financial situation of each party. *In re Marriage of Hair*, 40 Kan. App. 2d at 484 (citing *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 [1976]). These factors are nearly identical to those provided in K.S.A. 23-2802(c), which the district court used when making its award regarding the division of property and the award of spousal maintenance.

11

"Nevertheless, there are no fixed rules in determining the amount of a maintenance award." *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 713, 229 P.3d 1187 (2010) (citing *Williams*, 219 Kan. at 306). And the district court is not required to explicitly weigh each of the above factors when determining the need or amount of maintenance. Rather, the trial court's decision on spousal maintenance should be affirmed when its findings are supported by substantial competent evidence, even if there is some evidence which may have supported an alternate conclusion. See *In re Marriage of Hair*, 40 Kan. App. 2d at 486. Substantial competent evidence is evidence that possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709, 216 P.3d 170 (2009).

Here, the district court considered each of these factors in reaching its conclusion on the distribution of property and its maintenance award. While we do not have the trial transcript, we do have the district court's oral pronouncement, which discusses the evidence presented at trial. Based on that oral ruling, the district court considered the age of the parties (both 35 years old), the length of the marriage (157 months), their earning capacities ($100,000 per year for Ryan and $23,712 for Ashlia), and their education levels (a bachelor's degree versus a high school diploma). The district court also considered the property that the two had owned, the source and manner of the acquisitions, and the two's family ties and obligations. The district court also considered each party's needs, looking at their financial affidavits and testimony. The district court considered the sacrifices Ashlia had made to support Ryan's military career. Finally, the district court considered the parties' overall financial situation, including the disparity in property awarded to Ashlia and Ryan, with Ashlia receiving between $20,000 and $30,000 more than Ryan.

Property division and spousal maintenance awards inform each other. For example, if a spouse receives maintenance, it may mean the spouse will receive a smaller

12

property award. See *In re Marriage of Hair*, 40 Kan. App. 2d at 485. Here, Ashlia received between $20,000 and $30,000 more in property than Ryan. And, when explaining its rationale for the property division and the spousal support, the district court explained that property awards informed the amount of spousal maintenance. If Ashlia were to get the additional amount of support she requests on appeal—$335 more per month—for the length she requests—an additional 65 months—that would be an extra $21,775 in spousal maintenance obligations.

A careful review of the record indicates that the district court reasonably considered the length of the parties' marriage as a significant factor and basis for its determination of the length of the maintenance award, awarding 24 months of maintenance for the first 5 years of marriage and then one-third of the remaining 97 months (32 months) for a total of 56 months of spousal maintenance. Additionally, Ashlia had also received $1,500 per month in spousal maintenance under the district court's temporary orders.

While not all courts would agree, this court cannot say that no reasonable person would divide the property as the district judge did here. The judge thoughtfully reviewed each applicable factor and explained what evidence from trial he weighed under each factor. Spousal maintenance decisions are nuanced, and just because a different judge may have ordered Ryan to pay more or ordered him to pay for longer because of their difference in income, does not mean *no* reasonable person could rule the same way as the district court did herein, given the property award. See *In re Marriage of Larson*, 257 Kan. at 463.

As we discussed above, "[t]he district court has *wide* discretion regarding spousal maintenance, and an appellate court will only disturb a judgment regarding maintenance if there was a *clear* abuse of discretion." (Emphases added.) *In re Marriage of Hair*, 40

13

Kan. App. 2d at 483. The district court's spousal maintenance award was not arbitrary, fanciful, or unreasonable, so it was not an abuse of discretion.

D.    *We deny Ryan's motion for attorney fees.*

After Ryan filed his brief with this court, he filed a motion requesting the court order Ashlia to pay his attorney fees incurred on appeal.

A Kansas court cannot "award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Whether a court has the authority to award attorney fees is a question of law over which an appellate court has unlimited review. 297 Kan. at 162.

Appellate courts may award attorney fees "for services on appeal in cases where the district court had authority to award attorney fees." *Hodges v. Johnson*, 288 Kan. 56, 74, 199 P.3d 1251 (2009). District courts have broad discretion under K.S.A. 23-2715 to award attorney fees to either party in a divorce case "as justice and equity require."

While Ashlia's appeal was not successful, we cannot say it presented no justiciable question. We have discussed in detail the large income disparity between Ashlia and Ryan above. This conclusion is further bolstered by Ashlia's attorney's response to the motion for attorney fees on appeal, in which her attorney asserts that she could not afford a transcript of the bench trial and that the appeal was taken pro bono. Further, a review of the record indicates that this divorce proceeding has not been overly contentious and that the parties agreed to nearly all the terms of the divorce. This conclusion is reinforced by the district court's prior denial of Ryan's request for attorney fees.

In conclusion, equity and justice do not require Ashlia to be responsible for Ryan's attorney fees on appeal.

We affirm the district court's award of spousal maintenance and child support and deny Ryan's motion for attorney fees on appeal.

Affirmed.